TERENCE T. EVANS, Circuit Judge.
 

 Carol (now Kolodziej) and Edward Reines were married two months to the day before President Kennedy was assassinated in 1963. They were divorced 22 years later
 
 [1]
 
 in 1985. The divorce judgment incorporated a marital settlement agreement that contained a waiver — by both parties-of maintenance of any sort.
 

 Carol remarried soon after the ink dried on the divorce judgment, and a short time later she took steps to undo the judgment, alleging that she got a raw deal because Edward, among other things, failed to fully disclose his assets. The Illinois divorce court refused to upset the judgment, but that decision was reversed on Carol’s appeal.
 
 See In re Marriage of Reines,
 
 184 Ill.App.3d 392, 132 Ill.Dec. 654, 540 N.E.2d 394 (1989).
 

 After the judgment was reopened Edward and Carol again settled, and a “Supplemental Judgment for Dissolution of Marriage” incorporating the terms of the original marital settlement agreement was entered on November 15, 1990. The new judgment also awarded Carol a one-half interest in Edward’s pension, one he held as a result of his employment as a City of Chicago police officer. Edward’s pension is the focus of this appeal.
 

 On the same day (November 15,1990) that the divorce court entered the supplemental judgment it also entered another order, a QDRO (qualified domestic relations order in Illinois family law lingo), which provided that Carol’s interest in the pension would survive Edward’s death. The QDRO also provided
 
 *972
 
 that Carol would begin receiving pension benefits when Edward turned 50, in January of 1991.
 

 Subsequently the parties learned that the pension benefits award was exempt from division and thus unenforceable under the Illinois Pension Code. This was not good news for Carol, so she filed another petition with the divorce court, this time asking for post-judgment relief to reassess the deal in light of the unenforeeability of the pension award. The divorce court heard expert testimony from both parties regarding the value of Carol’s interest in the pension. On April 11, 1995, the court entered a judgment awarding Carol $137,500 in lieu of her receiving monthly pension payments. Edward filed, an appeal of this order on the issue of whether the “lump sum” nature of the award was proper, while Carol appealed the valuation of the award. We don’t know the status of these Illinois appeals.
 

 Edward subsequently filed for relief under Chapter 13 of the Bankruptcy Code (11 U.S.C. § 101
 
 et seq.).
 
 His principal unsecured creditor was Carol, whose claim, including statutory interest, has been set by the bankruptcy court at $143,539.17. Edward’s Chapter 13 petition proposed treating his debt to Carol (along with his other unsecured debts) under a plan in which the payment would be pegged at 50 percent of its value.
 

 Carol contested the dischargeability of the debt and objected to the confirmation of Edward’s plan. She argued that the pension obligation due from Edward was properly classified as a lump sum maintenance award, which makes it nondischargeable pursuant to 11 U.S.C. § 523(a)(5).
 
 See In re Platter,
 
 140 F.3d 676 (7th Cir.1998). Edward, of course, argued that the debt had nothing to do with maintenance and was dischargeable as a division of marital property.
 

 The bankruptcy court conducted an evi-dentiary hearing on the dispute, with Carol and Edward as the only witnesses. Though both parties were given the opportunity to present additional evidence, each stipulated to waive further proceedings in order to expedite a ruling from the court. A month later the bankruptcy court found that the debt was best classified as a division of marital assets and thus dischargeable in the bankruptcy proceeding. Based on this conclusion the court entered a separate order confirming Edward’s Chapter 13 plan. The district court affirmed the order on Carol’s appeal. We now review that order
 
 de novo,
 
 but we give deference to the findings of fact entered by the bankruptcy judge.
 
 See Platter, supra.
 

 The only issue on this appeal is whether the obligation owed to Carol by Edward is properly dischargeable in bankruptcy. A debt to a former spouse for alimony, maintenance, or support of the spouse or a child pursuant to a divorce decree is not dischargeable. 11 U.S.C. § 523(a)(5);
 
 In re Maitlen,
 
 658 F.2d 466, 468 (7th Cir.1981). But an indebtedness that results from a division of marital assets is dischargeable.
 
 In re Coil,
 
 680 F.2d 1170, 1171 (7th Cir.1982). So how should Edward’s debt to Carol be classified?
 

 Section 523(a)(5) establishes three requirements that must be met before a marital obligation becomes nondischargeable in bankruptcy: (1) the debt must be in the nature of alimony, maintenance, or support; (2) it must be owed to a former spouse or child; and (3) it must be in connection with a separation agreement, divorce, or property settlement agreement.
 
 Kinnally v. Fonnemann (In re Fonnemann),
 
 128 B.R. 214, 217 (Bankr.N.D.Ill.1991). Only the first element is in dispute. Therefore, we must decide whether Edward’s obligation to Carol was intended to be in the form of maintenance or whether it was only a division of property between the spouses.
 

 We start off with a few general observations. First, whether or not the debt is a maintenance obligation is a matter of federal bankruptcy, rather than state, law.
 
 In re Hass,
 
 129 B.R. 531, 536 (Bankr.N.D.Ill.1989);
 
 In re Calisoff,
 
 92 B.R. 346, 352 (Bankr.N.D.Ill.1988). Also, we are not bound by the labels attached to the obligation.
 
 In re Goin,
 
 808 F.2d 1391, 1392 (10th Cir.1987);
 
 Shaver v. Shaver,
 
 736 F.2d 1314 (9th Cir.1984). Next, we note that exceptions to discharge of a debt are construed
 
 *973
 
 strictly against a creditor and liberally in the debtor’s favor.
 
 In re Zarzynski,
 
 771 F.2d 304, 306 (7th Cir.1985). Lastly, we observe that a party seeking to establish an exception to discharge bears the burden of proof.
 
 Selfreliance Fed. Credit Union v.
 
 Harasymiw
 
 (In re Harasymiw),
 
 896 F.2d 1170, 1172 (7th Cir.1990). So the ball starts firmly in Carol’s court.
 

 How, then, is Edward’s debt to be classified? The answer depends on the intent of the parties. Unfortunately for Carol, there is no clear intent
 
 expressed
 
 to treat the debt as maintenance in the settlement papers. And categorizing a marital debt as maintenance in the absence of an expression of intent is not a default position. So with no clear intent expressed, we must look to other factors to try and figure out what the parties had in mind. This is a difficult task, and some courts have even devised elaborate “tests” to aid the quest.
 
 See, e.g., In re Daulton,
 
 139 B.R. 708 (Bankr.C.D.Ill.1992) (listing 20 factors). The end result of an exercise of this sort is usually a mixed bag with factors pointing in both directions. Such is the case here. Carol has several factors which auger in her favor. But so does Edward. And when we look at Edward’s factors — which include such things as the fact that “maintenance” usually ends upon remarriage and this debt doesn’t — we think his case has strength. We also note that the record does not show that Edward is well-off but Carol is struggling. Compare this to the situation in
 
 Matter of Dennis,
 
 25 F.3d 274 (5th Cir.1994), where a 54-year-old ex-wife with no work skills or education was pitted against her ex, a doctor with an “extremely successful medical practice” and an income of “well over a quarter of a million dollars a year,” and we see that Edward’s position gets stronger.
 
 Id.
 
 at 279. Additionally, we note that Edward and Carol’s children no longer need support, another factor that lends weight to Edward’s position that Carol’s claim on his pension was not needed nor intended to assist her with any obligations she may have to the children.
 

 There are other factors here that point in Edward’s favor, but we need not list them all. Further, the factors that Carol relies on at most bring her position into a dead heat with Edward. And if she can do no better than that, she loses, because the burden of proof rests with her.
 

 AFFIRMED.
 

 [1]
 

 . Mr. Reines' attorney, very competent on bankruptcy law, is apparently no whiz at math, for he tells us in his brief that the marriage lasted 18 years.