148 F.3d 879
 40 Collier Bankr.Cas.2d 519, Bankr. L. Rep. P 77,746
In the Matter of Maurice G. CROSSWHITE, Debtor-Appellee.
Appeal of Terry Crosswhite GINTER.
 No. 97-1128.
 United States Court of Appeals,
Seventh Circuit.
 Submitted Jan. 21, 1998.
Decided July 22, 1998.
 
 Stephen P. Rothberg (submitted), Fort Wayne, IN, for Appellant.
 Maurice G. Crosswhite, Columbia City, IN, Debtor-Appellee pro se.
 Before RIPPLE, MANION and EVANS, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 The question before us, in this bankruptcy appeal, is whether the two debts that Maurice Crosswhite agreed to assume and pay under a property settlement agreement are dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(15). The bankruptcy court held that the obligations were dischargeable and entered judgment for the debtor Crosswhite. The district court affirmed. For the reasons set forth in the following opinion, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.I
 
 BACKGROUND
 
 2
 When the marriage of Maurice and Terry Crosswhite was dissolved on August 16, 1994, Mr. Crosswhite was ordered to pay child support for their two children. Under the terms of the property settlement agreement incorporated into the divorce decree, Mr. Crosswhite kept possession of the marital residence and agreed to pay Terry (now Terry Crosswhite Ginter) $8,000 as a property equalization payment. In addition, Mr. Crosswhite agreed to assume, pay and hold Ms. Ginter harmless on two joint debts, $3,489 to Merchants Bank (to purchase Mr. Crosswhite's boat) and $1,700 to the General Federal Credit Union (to improve the real estate retained by Mr. Crosswhite).
 
 
 3
 This appeal focuses on the debts owed to the bank and the credit union. Mr. Crosswhite did not pay those marital obligations. Instead, on November 21, 1994, he filed a bankruptcy petition, as "Crosswhite d/b/a Morrie's Automotive Specialists," for relief under Chapter 7 of the United States Bankruptcy Code. When the bank brought suit, Ms. Ginter paid the debt. When the credit union threatened to sue, Ms. Ginter restructured the loan and made monthly payments to pay it. Then Ms. Ginter initiated an adversary proceeding in Mr. Crosswhite's bankruptcy by filing a complaint to determine the dischargeability of Mr. Crosswhite's property settlement agreement obligations under 11 U.S.C. § 523(a)(15).
 
 
 4
 The bankruptcy court held that debtor Crosswhite's property settlement obligations to Ms. Ginter were dischargeable under 11 U.S.C. § 523(a)(15)(B). The district court affirmed the bankruptcy court's decision. Ms. Ginter has appealed that judgment, and we have jurisdiction over this case pursuant to 28 U.S.C. § 158(d). We conduct a de novo review of the bankruptcy and district courts' legal interpretations; however, we review the findings of fact entered by the bankruptcy court only for clear error. See In re Reines, 142 F.3d 970, 972 (7th Cir.1998); In re Birkenstock, 87 F.3d 947, 951 (7th Cir.1996). In this case, no underlying facts are in dispute.
 
 II
 DISCUSSION
 A.
 
 5
 Section 523(a) of the Bankruptcy Code lists eighteen categories of debts that are excepted from a debtor's discharge, i.e., that are not dischargeable. When deciding whether a particular debt falls within a § 523 exception, courts generally construe the statute strictly against the objecting creditor and liberally in favor of the debtor in order to give the debtor a better chance at a fresh start. See Reines, 142 F.3d at 972-73. Consequently, the party claiming an exception to discharge usually bears the burden of proving by a preponderance of the evidence that the debt is not dischargeable. See Grogan v. Garner, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); In re Bero, 110 F.3d 462, 465 (7th Cir.1997). That policy of protecting and favoring the debtor is tempered, however, when the debt arises from a divorce or separation agreement. See 4 Lawrence P. King, Collier on Bankruptcy pp 523.05, 523.11 (15th ed. rev.1998) (stating that, with respect to enforcement of obligations for spousal and child support, Congress "has overridden the general bankruptcy policy in which exceptions to discharge are construed narrowly" against a creditor). Bankruptcy law has had a longstanding corresponding policy of protecting a debtor's spouse and children when the debtor's support is required. See Wetmore v. Markoe, 196 U.S. 68, 77, 25 S.Ct. 172, 49 L.Ed. 390 (1904) ("The bankruptcy law should receive such an interpretation as will effectuate its beneficent purposes and not make it an instrument to deprive dependent wife and children of the support and maintenance due them from the husband and father, which it has ever been the purpose of the law to enforce."); Shine v. Shine, 802 F.2d 583, 585-86 (1st Cir.1986) ("The exception from discharge for alimony and payments for maintenance and support has long been an accepted part of bankruptcy law.").[1] This policy is manifest in the Bankruptcy Code's § 523(a)(5); this section declares nondischargeable a marital obligation that was incurred by the debtor for alimony, maintenance or support of the debtor's spouse, former spouse or child.[2] This exception therefore expresses Congress' determination to protect former spouses in matters of alimony, maintenance, and support despite the Bankruptcy Code's general policy of providing a debtor with a fresh start. Because of this Congressional determination, a § 523(a)(5) exception from discharge is construed more liberally than other § 523 exceptions. See King, Collier on Bankruptcy p 523.05.
 
 
 6
 Subsection (15) of § 523(a) was added to the Bankruptcy Code in the Bankruptcy Reform Act of 1994 to expand the § 523(a)(5) exception to discharge for marital debts.[3] It states that an individual is not discharged from any debt
 
 
 7
 (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless--
 
 
 8
 (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
 
 
 9
 (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.
 
 
 10
 11 U.S.C. § 523(a)(15). This section is intended to cover divorce-related debts such as those in property settlement agreements that "should not justifiably be discharged." King, Collier on Bankruptcy p 523.21. The legislative history of this section reflects the same policy interest in protecting ex-spouses and children that is found in § 523(a)(5) by treating property settlement debts as nondischargeable.[4]
 
 
 11
 Many courts (including the bankruptcy and district courts reviewing Ms. Ginter's adversary proceeding in Mr. Crosswhite's bankruptcy) have criticized this provision for its lack of clarity. However, we believe that a careful parsing of the provision eliminates some of the confusion. Section 523 provides the general scheme for establishing exceptions from discharge, and two subsections provide specific protection to the debtor's children, spouse and former spouse. Subsection (5) establishes as nondischargeable the debtor's obligations of alimony, maintenance and support; subsection (15) sets forth as nondischargeable any marital debt other than alimony, maintenance or support that is incurred in connection with a divorce or separation. Subsection (15) then offers two exceptions to that rule of nondischargeability under sub-subsections, or subparts, (A) and (B). Therefore, a subsection (15) property settlement debt is not dischargeable unless, under (A), the debtor does not have the ability to pay the debt from disposable income, or, under (B), the benefit to the debtor in discharging the debt outweighs the detrimental consequences to the debtor's former spouse or child. See 11 U.S.C. § 523(a)(15); see also Hill v. Smith, 260 U.S. 592, 594-95, 43 S.Ct. 219, 67 L.Ed. 419 (1923) (stating that bankruptcy discharge is subject to exception which must be proven by the "one who would bring himself within the exception," and that when there is an "exception to the exception," the debtor must offer evidence to show his right to that benefit).
 
 B.
 
 12
 In the case before us, the bankruptcy court first considered Mr. Crosswhite's ability to pay the property settlement obligations pursuant to § 523(a)(15)(A). It held that the debtor Crosswhite, despite his current inability to pay his debts to Ms. Ginter, had the capability to pay the marital debts because he is a skilled and experienced mechanic who is reasonably able to earn more than he now does. The bankruptcy court placed on the debtor the burden of proving that he did not have the ability to pay his marital debts and concluded that Mr. Crosswhite failed to make that showing. As a result, the court concluded that the debtor did not qualify for the discharge exception provided under § 523(a)(15)(A). (That finding was not disputed in the district court and is not an issue before us.) The bankruptcy court then turned to Mr. Crosswhite's alternative possibility for excepting the property settlement debts under subpart (B). The bankruptcy court noted that Congress gave no guidance on how to balance the debtor's benefit against the creditor's detriment in its analysis of § 523(a)(15)(B). It chose to follow a "totality of the circumstances" approach which required both parties to proffer evidence: The debtor must present evidence demonstrating the benefits he would receive from a discharge of the debt, and the creditor must produce evidence of the detrimental consequences to her if the debt were discharged. According to the court, its role was to "balance one party's economic benefit against another party's economic detriment," R.7 App. at 13, but not to "inquir[e] into which of the two parties before the court is better able to pay," id. at 14. It announced that it would consider only financial factors--the income, expenses, and economic circumstances of each party and of their new spouses--and not non-economic evidence. The court then stated that it had examined the debtor's financial circumstances in connection with its analysis under subpart (A) and that the "analysis required by § 523(a)(15)(B) requires a similar evaluation of his former wife's circumstances." Id. at 17.
 
 
 13
 In its subsequent evaluation, the bankruptcy court noted that Ms. Ginter was remarried, that she and her current husband have full-time jobs and that their income was sufficient to cover more than their monthly obligations. It acknowledged Ms. Ginter's achievements: She "successfully weathered the financial storm created by the Debtor's failure to honor his commitments to hold her harmless from the marital debts he was to pay." Id. at 20. It also recognized that her financial stability is due primarily to her new spouse's productive employment and to his inheritance. Accepting as a "given" Mr. Crosswhite's "somewhat parasitic existence" with only a theoretical ability to pay his obligations as a result of his "long term commitment to suboptimal employment," id. at 19, it determined that discharging the debt was appropriate because Ms. Ginter's financial circumstances were better than Mr. Crosswhite's and would not deteriorate in this situation.[5] The bankruptcy court then held that Mr. Crosswhite's obligations to Ms. Ginter were dischargeable because the benefit of discharging the debt to him outweighed the detriment it caused to Ms. Ginter.
 
 
 14
 The district court affirmed the bankruptcy court's ruling. The district court concluded that the bankruptcy court did not err in its allocation of burdens under § 523(a). It agreed that, under subpart (B), the debtor should show the benefits to him and the nondebtor spouse then should show the detrimental impact on her if the debts are discharged. It then reviewed the factors followed by the bankruptcy court in balancing the equities and upheld the bankruptcy court's finding in favor of dischargeability.[6] It also examined whether Mr. Crosswhite's live-in girlfriend's finances should have been taken into consideration by the bankruptcy court. After noting a split of authority on this matter,[7] the district court concluded that the statute did not require a court to consider the assets of a debtor's "spousal equivalent" and therefore that the bankruptcy court did not err in failing to consider it. It affirmed the bankruptcy court's decision to discharge the property settlement debts.
 
 C.
 1.
 
 15
 Ms. Ginter, the creditor/nondebtor spouse, does not object to shouldering the initial burden under § 523(a)(15) of proving the existence of a nondischargeable debt--a debt that is not a § 523(a)(5) debt, but is one incurred by the debtor in the course of the divorce. Ms. Ginter does object, however, to what she believes is the additional burden placed on her by the bankruptcy and district courts: Under subpart (B), the statute requires, according to Ms. Ginter, that the creditor first prove that the nature of the debt is one encompassed under subsection (15); then the debtor must establish, as an affirmative defense, either that the debtor cannot pay the debt or that the benefit to the debtor of discharging the debt outweighs the resulting detriment to the nondebtor spouse. If the burden of proof had been placed on Mr. Crosswhite, she contends, the court would have found the debt nondischargeable because Mr. Crosswhite could not show that the benefit to him outweighed the harm to his former wife. Ms. Ginter therefore urges this court to place the burden of proving § 523(a)(15)(B) on the debtor.
 
 
 16
 Upon consideration of the statutory language, the structure of the statute, the legislative history and the case law, we conclude that there is a clear shift in the burden of proof under § 523(a)(15). The burden of proving initially that she holds a subsection (15) claim against the debtor should be borne by the creditor (nondebtor/former spouse). To make that showing, the creditor must establish that the debt is within the purview of subsection (15) by demonstrating that it does not fall under § 523(a)(5) and that it nevertheless was incurred by the debtor in the course of the divorce or in connection with a divorce decree or similar agreement. Once that showing has been established, the burden of proving that he falls within either of the two exceptions to nondischargeability rests with the debtor. In short, once the creditor's initial proof is made, the debt is excepted from discharge and the debtor is responsible for the debt unless either of the two exceptions, subpart (A), the "ability to pay" test, or (B), the "detriment" test, can be proven by the debtor.
 
 
 17
 It is logical and reasonable that the debtor bear the burden of proving either exception to nondischargeability. Certainly the debtor is most able to make the showing, under subpart (A), that he cannot pay the debt. Thus, it is appropriate that the debtor have the burden of proving his inability to pay the obligations in question. The debtor is also the appropriate party to make the showing, under subpart (B), that the benefit he receives from not having to pay the debt at issue is greater than the detrimental effects on the creditor--his spouse, former spouse or child--who then must pay the debt. If Congress had intended that the burden be placed on the creditor/former spouse, the provision would have been reversed to require a showing that the detrimental consequences to the creditor outweigh the benefit to the debtor.
 
 
 18
 It is true that the burden-of-proof analysis is more complex under subpart (B) because the court must consider the equity of the discharge by weighing its effect on each party. In the end, however, the appropriate judicial methodology follows the same basic approach as the one employed in subpart (A). The debtor ultimately must demonstrate that, if the debt is discharged, the benefit to the debtor of that discharge is greater than the harm to the creditor. To be sure, each party must come forward with the information necessary to make that final assessment: The debtor alone can show how beneficial the discharge of that debt would be; the creditor alone can demonstrate how detrimental the discharge of that debt would be. Nevertheless, the statute clearly places the ultimate burden on the debtor to prove to the court, in the manner of an affirmative defense, that the debt should be discharged under subpart (A) because he is unable to pay or under subpart (B) because the benefit to him outweighs the harm to the creditor.
 
 
 19
 Our analysis of the burdens of proof under § 523(a)(15) comports with the reasoning of the two bankruptcy appellate panels that have decided the issue.[8] The Bankruptcy Appellate Panel of the Ninth Circuit explained that, "once the Plaintiff demonstrates that the Debtor incurred the debt in connection with divorce, the burden shifts to the Debtor to prove subparts (A) and (B)." In re Jodoin, 209 B.R. 132, 140 (9th Cir. BAP 1997). According to that court, the word that triggers the shifting of the burden to the debtor is the term "unless," just prior to the subparts, which "creates an exception within an exception." Id. Because the debtor is the party claiming the exception to the nondischargeability of the property settlement debt, it is the debtor who has the burden of "com[ing] forward with evidence to establish the viability of either test."[9] Id. at 141 (comparing Hill v. Smith, 260 U.S. 592, 595, 43 S.Ct. 219, 67 L.Ed. 419 (1923)).
 
 
 20
 Recently, the Bankruptcy Appellate Panel of the Eighth Circuit also concluded that "the burden of proof lies with the debtor to show that an exception to nondischargeability under § 523(a)(15)(A) or (B) applies in a given case." In re Moeder, 220 B.R. 52, 56 (8th Cir. BAP 1998). That court, examining the language of the statute, concluded that subparts (A) and (B) were exceptions that "constitute affirmative defenses to nondischargeability which must be proven by the debtor to escape nondischargeability of the disputed debt." Id. The Bankruptcy Appellate Panel reversed the bankruptcy court decision on the ground that it improperly allocated the burden of proof to the creditor; it remanded so that the bankruptcy court could make new factual findings while placing the burden on the debtor to prove either exception, (A) or (B), to nondischargeability. Id. at 56.
 
 2.
 
 21
 Application of these principles to the case before us is no easy task. As the bankruptcy court noted at some length in its thoughtful opinion, § 523(a)(15) is a difficult provision to apply in the practical setting of bankruptcy administration. Yet, it embodies important Congressional policy determinations that we are bound to acknowledge and to enforce. As the bankruptcy court and, in turn, the district court grappled with the jello-like statutory language, both appeared to acknowledge, at one point, that the burden of establishing the exception is on the debtor. However, a reading of both opinions in their entirety leaves us with grave doubt as to whether abstract verbalization of the correct standard actually was applied in the courts' analyses.[10] Rather, it appears to us that these courts may well have placed improperly the burden of satisfying the test under § 523(a)(15)(B) on the creditor, Ms. Ginter, rather than on the debtor, Mr. Crosswhite.
 
 
 22
 At the outset, there is some ambiguity in the bankruptcy court's opinion as to whether, in applying subpart (B), the court actually considered the financial circumstances of both parties.[11] However, even if we give the court the benefit of the doubt on that score, there is even greater reason to doubt that either the bankruptcy court or the district court required the debtor to carry the ultimate burden on the nonapplicability of the exception. Both courts quite correctly understood that each party has the responsibility to supply the information within its exclusive control to the court in order that the court may engage in the comparative analysis of the circumstances of the debtor and the creditor called for by subpart (B). But they do not seem to have placed the ultimate burden of persuasion on the debtor as the subpart requires.
 
 
 23
 The courts' failure to place the ultimate burden of persuasion on the debtor, Mr. Crosswhite, may stem in part from the bankruptcy court's exclusive focus on what it termed the "economic" considerations, a term the court left largely undefined. We agree that the appropriate inquiry under subpart (B) is the economic impact that the exception of these debts would have on the debtor and the creditor, but we believe that this economic impact must take into consideration the clear intent of the Congress, in enacting § 523(a)(15), to broaden the types of marital debts that are nondischargeable beyond those described in subsection (a)(5).[12] Subsection (15) supports state court enforcement, upon the dissolution of a marriage, of family responsibilities through an equitable distribution of marital property in addition to a continuing obligation to provide alimony and support for the children of their marriage. This new exception provision was enacted in large part to recognize that state protection for a divorced spouse and dependent children is no longer a simple matter of alimony and support payments. Property settlement arrangements are considered important components of the protection afforded individuals who, during the marriage, depended on the debtor for their economic well-being.[13] State courts are less concerned now to distinguish between support and property division, see Bernice B. Donald and Jennie D. Latta, The Dischargeability of Property Settlement and Hold Harmless Agreements in Bankruptcy: An Overview of § 523(a)(15), 31 Fam. L.Q. 409, 412 (1997). The Bankruptcy Code, by adding § 523(a)(15), has set forth two subsections that are mutually exclusive: Subsection (5) encompasses alimony, maintenance and support, and subsection (15) applies only to debts "not of a kind described in paragraph (5)." Id. at 415 (quoting § 523(a)(15)). Both bankruptcy provisions except marital debts from discharge, however, and together they were intended by the Congress "to rectify the perceived inequity resulting in many cases decided under § 523(a)(5)." Id. at 414. In light of the Congress' desire to uphold a state court's effort to effect economic justice between the parties to a marriage, bankruptcy courts must consider this clear intent when making the economic determination required by subpart (B).
 
 
 24
 For this reason, we cannot agree with the proposition, expressed succinctly by the district court, that the bankruptcy court's judgment, which "appears to be harsh," R.8 at 13, and "rewards [the debtor's] irresponsibility," was "mandated by Congress." Id. (quoting In re Hesson, 190 B.R. 229, 241 (Bankr.D.Md.1995)). Congress, by enacting § 523(a)(15), made it clear that, even if the state courts did not use the traditional devices of alimony and support, the long-term responsibilities of the debtor to those with whom he once had a familial relationship and to those who are dependent upon him because of that familial relationship are economic factors that must be weighed. Here, the court failed to require Mr. Crosswhite to demonstrate whether "the benefit to Debtor ... outweighs the detriment to Plaintiff."[14] Subparts (A) and (B) are two separate tests; however, the debtor has the burden of proof with respect to each. We therefore must vacate the decision of the district court and remand the case to that court with instructions to remand it to the bankruptcy court for new factual findings made under the proper burden of proof.
 
 D.
 
 25
 Ms. Ginter also contends that the bankruptcy court misapplied the factors it used in the "totality of circumstances" test when balancing the equities under § 523(a)(15)(B). In particular, she asserts that the bankruptcy court's benefits-detriments analysis was incorrect because it took into account her new husband's significant contribution to her financial improvements but failed to consider the financial contribution made by the debtor's "spousal equivalent," his live-in girlfriend. According to Ms. Ginter, Mr. Crosswhite's deliberate failure to pay his property settlement obligations has created personal and financial hardships on her and on their children. She notes that she works full time as a sales assistant, that she earns about $25,000 to support herself and the debtor's two children, and that she must live in a mobile home while he lives in the family residence. In her view, Congress clearly intended such debts to be nondischargeable unless the debtor, not the nondebtor, proved otherwise, and the record clearly shows that the debtor did not accomplish such a showing.
 
 
 26
 We appreciate the difficult role that this statute imposes on courts that are charged with applying that equitable balancing test. Bankruptcy courts have expressed their frustration over the lack of guidance from Congress with respect to this responsibility for balancing the benefit and the detriment in order to reach an equitable resolution.[15] In an effort to meet this difficult responsibility, the bankruptcy courts have developed a "totality of the circumstances" test as the general method for weighing benefit and detriment; however, they use a number of different approaches for applying that umbrella test.[16]
 
 
 27
 In this case, we need not set forth in detail an exhaustive methodology applicable in each and every case. Indeed, the equitable nature of the inquiry renders futile an attempt to impose such a universal formula. We believe that the bankruptcy court set the correct course when it adopted a "totality of the circumstances" approach to its inquiry. Its later deviation from that course, when it omitted from its analysis an evaluation of factors that could have a real impact on the actual overall economic condition of Mr. Crosswhite, compounded its earlier failure to place upon him the ultimate burden of qualifying for the exception. The bankruptcy court determined that it ought not take into account the contribution of his live-in girlfriend to his economic condition. However, economic interdependence can indeed result in a significant alteration of economic realities.[17] To the extent that her contribution to household living expenses actually improved Mr. Crosswhite's economic picture, it was not, we believe, a factor that ought to have been eliminated from any consideration.
 
 Conclusion
 
 28
 Because the bankruptcy court did not take into account all of the factors that it ought to have weighed and because it did not place the ultimate burden of establishing the § 523(a)(15)(B) exception on the debtor, we must vacate the decision of the district court and remand the case to that court with instructions to remand it to the bankruptcy court for new factual findings made under the proper burden of proof.
 
 
 29
 Therefore, we vacate the judgment of the district court with directions that the case be remanded to the bankruptcy court for further consideration consistent with this opinion.
 
 
 30
 VACATED AND REMANDED.
 
 
 31
 MANION, Circuit Judge, dissenting.
 
 
 32
 I agree with much of the court's thorough analysis, but I differ on a couple of important points that lead me to a different conclusion. Thus, I respectfully dissent.
 
 
 33
 Resolving this appeal is problematic because not only do we face issues of first impression in any circuit court, but the debtor, who prevailed in the bankruptcy court, did not defend his victory in the district court or here. So we have only the appellant's brief and the lower court opinions to help us decide this appeal.
 
 
 34
 I fully agree with the court and both lower courts on the burden of proof. The creditor bears the initial burden to show that the debts come within the ambit of 11 U.S.C. § 523(a)(15) but the burden then shifts to the debtor to show that one of the exceptions in subsection (A) or (B) apply. But the burden of proof is only the preliminary, not the primary analysis under subsection (a)(15)(B)'s balancing of harms. As the court correctly notes, this balancing is equitable in nature and precludes any "universal formula." Opinion p. 888. This is mandated by looking at the "totality of the circumstances." Thus, the bankruptcy court's decision as to how those harms balance out should be reviewed only for an abuse of discretion. See In re Jodoin, 209 B.R. 132, 135 (9th Cir.BAP1997) (applying abuse of discretion standard); cf. In re Adams, 200 B.R. 630, 632 (N.D.Ill.1996) (mixing abuse of discretion and clear error). Of course, a court abuses its discretion when it misapprehends the law or relies upon clearly erroneous fact finding. See, e.g., Koon v. United States, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).
 
 
 35
 Under the balancing required by subsection (a)(15)(B), there are three possible outcomes: the creditor's detriment outweighs the debtor's benefit; the creditor's detriment equals the debtor's benefit; or the creditor's detriment is less than the debtor's benefit. The statute's text makes clear that only in the third case would the debt be dischargeable under (a)(15)(B) because the debtor's "benefit" must "outweigh" the creditor's "detrimental consequences." This determination depends mostly on how the bankruptcy court weighs the facts and circumstances of the case. While the debtor has the burden of proving that the harms balance in his favor, most of the analysis must focus on what the bankruptcy court actually found.
 
 
 36
 Both of the lower courts stated the appropriate burden of proof, but this court remands because it questions whether they actually applied that burden. I conclude that they did apply the burden they recited, leaving the key question of whether the bankruptcy court abused its discretion in balancing the harms under (a)(15)(B) in favor of Crosswhite. In my view it did not, and therefore I would affirm. Even if one considers Crosswhite's girlfriend's contribution--which as I address below I would not--his economic position is still worse than Ginter's. (For example, Crosswhite is responsible for child support, which is nondischargeable under (a)(5), and an $8,000 property equalization debt that is a lien on his house.) Without additional facts the bankruptcy court could again find that the benefit to Crosswhite from discharging the $5,300 in debts at issue outweighs the detrimental consequences the discharge would cause to Ginter regardless of who has the ultimate burden of proof. Under this statute, who bears the burden of proof tells us who wins ties. Cf. Soto v. Johansen, 137 F.3d 980, 982 (7th Cir.1998). Because of the way the law is written, this is not even a close case, much less a tie.
 
 
 37
 Back to Crosswhite's girlfriend. The court concludes that the bankruptcy court erred by not considering the income of his live-in girlfriend as part of the totality of the circumstances that had to be weighed. There is no question that the income of a debtor's new spouse should be considered just as the income of a creditor's new spouse should be. But generally a live-in girlfriend (or boyfriend) is not a "spousal equivalent." Crosswhite's girlfriend can leave him whenever she tires of his "somewhat parasitic existence," and he would have no claim for continued support; that is not true of Ginter's new husband. There may be unusual situations in which a non-spouse is a "spousal equivalent." See In re Bicsak, 207 B.R. 657, 658 (Bankr.W.D.Mo.1997) (involving couple who lived together for five years, were married and had child together but marriage was annulled because wife's prior marriage had not been properly dissolved). The extent that a non-marriage relationship is marriage-like should be a fact for the bankruptcy court to find, and how that fact weighs into the balance should then be within the bankruptcy court's discretion. Even giving the girlfriend's contribution zero weight--as the bankruptcy court did here--would not necessarily be an abuse of discretion without some specific determination that indicates some extra-marital bond (for example, a child, joint title to real estate, or some contractual obligation). Otherwise, the girlfriend could be gone at a moment's notice with no purse strings attached.
 
 
 38
 The bankruptcy court's finding that Crosswhite did not satisfy the requirements of § 523(a)(15)(A) is not before us because Crosswhite did not contest this appeal in this court or the district court, much less file a cross-appeal. But given the court's remand, I question the bankruptcy court's imputing of potentially earned income to Crosswhite. This appears to be wrong as a matter of law but the court seems to leave open the question of whether under the balancing of harms analysis of § 523(a)(15)(B), the bankruptcy court could or should impute to a debtor income he could earn if he were not engaged in "suboptimal employment." In applying this subsection, a bankruptcy court should not impute to a debtor income that he could earn if he had better employment. Such a finding would necessarily be speculative, even where, as in this case, there is some evidence to support it. The Fifth Circuit in In re Killough, 900 F.2d 61, 65 (5th Cir.1990), held that the finding that income from overtime should not be included in a Chapter 13 plan was not clearly erroneous--even where overtime had been earned in the past and would likely be available in the future--because the possibility of getting such overtime was not "definite enough." That reasoning applies with added force to whether the bankruptcy court could impute earnings from a job Crosswhite does not even have. It is certainly possible, even likely, that someone else with comparable skills could obtain a job paying considerably more than Crosswhite earns. But the cold fact is that Crosswhite does not have such a job, which is probably why he is in bankruptcy rather than paying off his debts. Perhaps he works for himself because he cannot work for others; this raises issues of Crosswhite's personality, disposition, and work ethic, which would have to be put in the record. And because under (a)(15)(B) the bankruptcy court must look into the totality of the circumstances, if Crosswhite's potential employment is to be considered, so would Ginter's and her new husband's potential for more income. Inquiring into what Crosswhite could earn invites multiple layers of speculation. Moreover, most people are engaged in "suboptimal employment" if that term means nothing more than that they could earn more doing something else (or in addition to) what they actually do. Social workers, teachers, and parents who stay home to raise children are good examples of people who could presumably make more money applying their skills and education toward more lucrative ends. A bankruptcy court should not speculate about what a person could earn when the best evidence of that is what he actually does earn. See, e.g., Vaughn v. Illinois State Scholarship Comm'n (In re Vaughn), 151 B.R. 481, 486 (C.D.Ill.1993) (possibility of getting good-paying job in the future cannot be basis of finding no undue hardship under 11 U.S.C. § 523(a)(8)(B) because that possibility applies to every debtor). It would be a different issue if a debtor intentionally sought employment far below his potential simply to go bankrupt and defraud his creditors; such a finding could amount to bad faith or substantial abuse and justify dismissing the bankruptcy petition all together. Compare In re Helmick, 117 B.R. 187, 189 (Bankr.N.D.Pa.1990) (finding bad faith), with In re Martin, 189 B.R. 619, 626-27 (Bankr.E.D.Va.1995) (finding no bad faith).
 
 
 39
 Finally, it is not necessary to delve into the legislative history of § 523(a)(5) and (a)(15) because--at least to the extent necessary to resolve this appeal--the legislative intent and policy are clear from the text of the statute itself. Nothing in the statute suggests treating the (a)(5) and (a)(15) exceptions differently from any of the many other exceptions to discharge in § 523(a). And the statute clearly expresses the legislative intent to treat creditors less favorably under (a)(15) than under (a)(5) because (a)(5) has no exceptions to non-dischargeability while (a)(15)'s two exceptions benefit the debtor at the expense of the creditor. If anything, the legislative history only confirms what is clear from the text. See Opinion at p. 887 n. 12 (citing House Report stating that support debts--covered by (a)(5)--must take precedence over property settlement debts--covered by (a)(15)). This policy choice is rational: support debts can be considered more important and so it would make no sense to load a debtor up with property settlement debts to the point that he could not pay his support debts. To the extent this policy choice is debatable--and the court notes numerous commentators who disagree with it--the wisdom of that choice is a matter for the political branches.
 
 
 40
 Certainly the outcome here does not seem fair. Ginter and her new husband, with decent jobs, are easily better off than Crosswhite, who is underemployed and partially dependent on a live-in girlfriend who could be gone tomorrow. But given that equation, "discharging [the] debt would result in a benefit to [Crosswhite] that outweighs the detrimental consequences to [Ginter]." While we can question the efficacy of such a law, we cannot rewrite it to make it more equitable. We must apply it as is and let Congress make any needed changes. Also, whether we should, as a general matter, interpret the two divorce-related exceptions as we do the other exceptions--narrowly against the creditors--is not relevant here, where there is no dispute that the two debts are covered by (a)(15). We are not called on to construe any textual ambiguities about what is or is not a covered debt.
 
 
 41
 I would affirm the lower courts.
 
 
 
 [1]
 Cf. Farrey v. Sanderfoot, 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991) (holding that § 522(f) does not permit a debtor to avoid a lien granted to the debtor's former spouse under a divorce decree that extinguishes all previous interests the parties had in the property and in no event secures more than the spouse's former interest). Congress supplemented the reach of this holding in § 304(c) of the Bankruptcy Reform Act of 1994. See H.R.Rep. No. 103-835, at 54 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3363
 
 
 [2]
 In pertinent part, this § 523 exception to discharge provides:
 (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt--
 ....
 (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement
 ....
 
 
 [3]
 The legislative history of § 304, entitled "Protection of child support and alimony," reflects the Congress' protective stance toward a debtor's former spouse and children:
 This section is intended to provide greater protection for alimony, maintenance, and support obligations owing to a spouse, former spouse or child of a debtor in bankruptcy. The Committee believes that a debtor should not use the protection of a bankruptcy filing in order to avoid legitimate marital and child support obligations.
 H.R.Rep. No. 103-835, at 54 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3363; see also Macy v. Macy, 114 F.3d 1, 3 (1st Cir.1997) ("There is a strong policy interest in protecting ex-spouses and children from the loss of alimony, support and maintenance owed by a debtor who has filed for bankruptcy.").
 
 
 [4]
 See H.R.Rep. No. 103-835, at 54 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3363
 
 
 [5]
 The bankruptcy court found it significant that, because Mr. Crosswhite's obligation to pay the $8,000 property equalization award to Ms. Ginter was secured by a judicial lien on Mr. Crosswhite's residence, Ms. Ginter had the opportunity to obtain payment in full. We note, however, that the lien covered only the $8,000 award and not the property settlement debts
 
 
 [6]
 The district court summarized the factors presented by the bankruptcy court in its analysis of subparts (A) and (B): (1) The debtor's ability to pay was theoretical because his "long term commitment to suboptimal employment" allowed him to "continue his somewhat parasitic existence"; (2) the debts were not intended to reduce any payments for alimony, maintenance or support; (3) the divorce decree gave rise to a judicial lien on the marital residence in favor of Ginter under Indiana law; (4) Ms. Ginter "has successfully weathered the financial storm created by the debtor's failure to honor his commitments;" and (5) Ms. Ginter's present financial condition, after her remarriage, is much better than Mr. Crosswhite's. R.8 at 9-10. The district court agreed with the factors, the bankruptcy court's application of the factors and its conclusion that the facts weigh in favor of finding dischargeability. Id. at 10
 
 
 [7]
 Compare In re Cleveland, 198 B.R. 394, 399 (Bankr.N.D.Ga.1996) (considering income of new spouse or spousal equivalent when applying § 523(a)(15)(A)) with In re Willey, 198 B.R. 1007, 1015 (Bankr.S.D.Fla.1996) (refusing to consider income of a debtor's girlfriend)
 
 
 [8]
 Among the bankruptcy and trial court rulings, various approaches are used in allocating the burden of proving subparts (A) and (B). Most decisions place the burden of proof on the debtor. Some require the burden to be borne by the creditor, however, and some use a bifurcated methodology by which the debtor has the burden of proving his inability to pay the debt and the creditor must prove that the detriment to her outweighs the benefit to the debtor. See In re Jodoin, 209 B.R. 132, 139-40 (9th Cir.BAP 1997) (reviewing the three approaches to the burden of proof, collecting cases, choosing the majority position); see also William L. Norton, Jr., Norton Bankruptcy Law and Practice 2d § 47:35.5 (1998 ed.). Scholarly analyses agree that the burden of proof for subparts (A) and (B) should be on the debtor. See, e.g., Thomas E. Ray, The Dischargeability of Support Obligations--The Application of New § 523(a)(15), 14-NOV Am. Bankr.Inst. J. 16 (1995) ("While the creditor generally bears the burden of proof through a preponderance of evidence that a debt should be nondischargeable, the debtor has the burden of proof to come within one of the two exceptions set out in § 523(a) and (b)."); cf. Brian P. Rothenberg, The Dischargeability of Marital Obligations: Three Justifications for the Repeal of § 523(a)(15), 13 Bankr.Dev. J. 135, 161 n. 168 (1996) (noting that § 523(a)(15) left unresolved who has the burden of proving the two defenses available to the debtor)
 
 
 [9]
 The Ninth Circuit's Bankruptcy Appellate Panel also noted that § 523(a)(15) is similar to § 523(a)(8), a provision for which "courts have imposed the burden of demonstrating undue hardship in paying student loans on the debtor." Jodoin, 209 B.R. at 140. We, as well, have recognized that § 523(a)(8) is structured in the "exception within an exception" format. It provides that a guaranteed student loan debt is nondischargeable unless (A) it "first became due more than 7 years" before bankruptcy, or (B) "excepting the debt from discharge would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8) (emphasis added). Our court, like others, has held that the burden of proving that the circumstances warrant discharge falls on the debtor. See In re Roberson, 999 F.2d 1132, 1137 (7th Cir.1993). In the same way, we believe, the burden of proving that the benefit of discharge outweighs the resulting detriment under § 523(a)(15)(B) should be borne by the debtor
 
 
 [10]
 Although the bankruptcy court noted that the debtor "bears the burden of proving that the debt in question should be discharged," R.7 App. at 15, it also opined, immediately after discussing the "evidentiary responsibilities" of the creditor, that "the exception to discharge created by § 523(a)(15) will operate only in a relatively narrow class of cases where: (1) the economic survival of the former spouse may depend upon whether or not the debtor's obligation is discharged, or (2) the debtor's disposable income is large enough so that it could pay with relative ease and, if it does not do so, the former spouse's economic circumstances would be significantly disrupted." Id. at 16. The court also noted its belief that this exception ought to be treated "narrowly against the creditor." Id. at 17
 
 
 [11]
 See discussion infra note 14
 
 
 [12]
 In deciding whether a debt is nondischargeable under § 523(a)(15), it must be determined that the debt is not a debt "of the kind described in [sec.523(a)(5) ]." Under § 523(a)(5), alimony, support and maintenance obligations are nondischargeable; however, as we discussed earlier, property settlement debts were not protected by the § 523(a)(5) exception and were dischargeable. By adding § 523(a)(15) to the Bankruptcy Code in the 1994 amendments, Congress included other marital obligations such as property settlement agreements to the list of exceptions to discharge. However, Congress made clear "that payment of support needs must take precedence over property settlement debts." See H.R.Rep. No. 103-835, at 54 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3363
 
 
 [13]
 See Brian P. Rothenberg, The Dischargeability of Marital Obligations: Three Justifications for the Repeal of § 523(a)(15), 13 Bankr.Dev.J. 135, 153 (1996). As one commentator has noted, "[s]ocial realities beyond the world of bankruptcy jurisprudence oblige bankruptcy courts to respect and insure the integrity of family court judgments whenever possible." Meredith Johnson, At the Intersection of Bankruptcy and Divorce: Property Division Debts under the Bankruptcy Reform Act of 1994, 97 Colum.L.Rev. 91, 100 (1997)
 
 
 [14]
 Concerning Mr. Crosswhite's financial situation, we note that the record reflects that Mr. Crosswhite is a self-employed auto mechanic. He lives in the marital home with his girlfriend; he gives her his income and she makes up the deficiency in the monthly bills. Under the subpart (A) analysis, the bankruptcy court criticized Mr. Crosswhite for remaining self-employed and for choosing "a lifestyle that cannot be sustained without the continual financial assistance of third parties." R.7 App. at 9. The court concluded:
 Instead of working for someone else who would pay him enough money to provide for himself and pay his debts, Debtor has chosen to remain self-employed in order to pursue a business that has historically been unprofitable and which will continue to be so for the foreseeable future. Debtor is reasonably capable of earning more, if he took advantage of the opportunities available to him. Debtor has failed to prove that he does not have the ability to pay his debts to Plaintiff.
 Id. In the subpart (B) analysis, however, although the bankruptcy court again referenced Mr. Crosswhite's "suboptimal employment" and "somewhat parasitic existence," id. at 19, it did not reconsider the factor so important under subpart (A)--that Mr. Crosswhite "is reasonably capable of earning more." Id. at 9. Nor (as we discuss later) did the bankruptcy court consider such other factors as the financial contributions of Mr. Crosswhite's live-in girlfriend.
 
 
 [15]
 See, e.g., In re Phillips, 187 B.R. 363, 369 (Bankr.M.D.Fla.1995) (stating that the court is required to evaluate the parties' lifestyles and to make a value judgment in deciding which party suffers the most)
 
 
 [16]
 Some courts, like the bankruptcy court in this case, follow a finances-based test; others incorporate intangible non-economic factors into their analyses. Some bankruptcy courts count a spouse's contributions under subpart (B). See In re Gantz, 192 B.R. 932, 936-37 (Bankr.N.D.Ill.1996) ("[T]he extent to which a spouse's contributions or expenses impact on the debtor should be relevant in balancing the equities."). Some count the contributions of live-in companions on the ground that all income that is part of the debtor's household should be considered when weighing the equities. See In re Halper, 213 B.R. 279, 284 (Bankr.D.N.J.1997); In re Cleveland, 198 B.R. 394, 399 (Bankr.N.D.Ga.1996). Other courts focus only on the debtor and creditor and do not take into consideration a spouse's or companion's income. See In re Willey, 198 B.R. 1007, 1015 (Bankr.S.D.Fla.1996). There is disagreement, as well, about whether the court should take into account the parties' future possible income and expenses in its balancing. See In re Jodoin, 209 B.R. 132, 142 (9th Cir.BAP 1997) (noting that the test is properly applied when it weighs the prospective income that the debtor should earn). As the case law has grown, legal scholars and courts surveying the decisions under subpart (B) have noted inconsistent results rather than consensus in the equitable balancing. See, e.g., Barbara J. Van Gorder, Section 523(a)(15) of the Bankruptcy Code: A Paving Stone on the Road to the Region of Hades Reserved for Litigation Nightmares, 77 B.U.L.Rev. 1121, 1125, 1146-49 (1997); Meredith Johnson, At the Intersection of Bankruptcy and Divorce: Property Division Debts Under the Bankruptcy Reform Act of 1994, 97 Colum.L.Rev. 91, 110, 113, 125 (1997)
 
 
 [17]
 We leave to the bankruptcy judge the task of determining whether there has been a sufficient degree of economic interdependence to have altered Mr. Crosswhite's economic situation. In arriving at this judgment, the bankruptcy judge ought to consider such factors as the period of time the individuals have lived as a single economic unit and the degree to which they have commingled their assets