In re Miguel SANABRIA, Debtor.

Myrta Maldonado, Plaintiff,

v.

Miguel Sanabria, Defendant.

Bankruptcy No. 98–28901.
Adversary No. 98–2857.

United States Bankruptcy Court,
D. New Jersey.

April 4, 2002.

Beverly A. Plutnick, Feldman & Plutnick, Somerville, NJ, for Myrta Maldonado.

Daniel M. Eliades, Forman, Holt & Eliades LLC, Rochelle Park, NJ, for Miguel Sanabria.

## OPINION

WILLIAM H. GINDIN, Bankruptcy Judge.

### PROCEDURAL HISTORY

Presently before the court is a complaint filed by the plaintiff requesting a determination of non-dischargeability pursuant to 11 U.S.C. § 523(a)(5) and/or 11 U.S.C. § 523(a)(15) of a debt owed by the debtor to the plaintiff by virtue of a property settlement in conjunction with a divorce decree.

The plaintiff and defendant were married on May 26, 1978, and divorced on February 11, 1997. On or about May 2, 1998, the debtor/defendant, Miguel Sanabria filed a Chapter 11 petition. The petition was converted to one under Chapter 7 on or about April 21, 1999. In this adversary proceeding, Myrta Maldonado, the debtor's ex-wife, seeks to have certain debts owed to her declared non-dischargeable pursuant to 11 U.S.C. § 523(a)(5) and/or (a)(15).

The court conducted a trial in this matter on November 5, 2001 and reserved decision. At trial both Myrta Maldonado and Miguel Sanabria testified.

### JURISDICTION

The court has jurisdiction over the instant matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. The case presents a core matter as defined in 28 U.S.C. § 157(b)(2)(I). Venue is properly in this district pursuant to 28 U.S.C. § 1408. To the extent that this court is found to have no jurisdiction as to any matter, this opinion shall constitute a report and recommendation pursuant to 28 U.S.C. § 157(c)(1).

### FACTS

The plaintiff and defendant were married on May 26, 1978 and divorced on February 11, 1997. During the marriage, the parties operated several businesses together. Some of the businesses were Miguel's Banquet Hall, Sanabria's General Insurance, a liquor store and a travel agency. The parties also purchased investment properties.

As a result of the divorce, the parties business relationship ended. The parties entered into a Property Settlement Agreement on or about January 6, 1997. The agreement provided that Mr. Sanabria

would pay $100 per week in child support and $400 per week in alimony. Additionally, Sanabria would pay a sum of $350,000, payable over five years. $10,000 was to be paid each year for the first five years, and a lump sum of $300,000 was due in the fifth year as a final payment. The $350,000 sum was to be paid in exchange for the plaintiff's agreement to transfer all of her right, title and interest in the properties jointly owned by the parties to the defendant in addition to the defendant retaining control and ownership of the insurance business. In return, the defendant would release Maldonado from responsibility for liability on existing mortgages.

The defendant failed to comply with the terms of the Property Settlement Agreement. The plaintiff filed three applications for enforcement. On July 9, 1998, the defendant filed a Chapter 11 petition, which was converted to a Chapter 7 petition upon motion by the U.S. Trustee's office.

As exhibits, Sanabria submitted his individual tax returns from 1997 and 1998. The returns show that Sanabria's total income was $16,112 for 1998 and $21,825 for 1997. Sanabria testified that his income in 1999 and 2000 was within the $17,000 to $25,000 range, and is the combined total of the $3,000 Sanabria received as a Commissioner on the Planning Board and the $14,000 $22,000 he received as commissions in his insurance business. Although Sanabria's tax returns for 1999 and 2000 were not submitted to the court, the amounts to which he testified are consistent with his income in 1997 and 1998 and nothing in the record supports a finding that his testimony was other than truthful.

Additionally, Sanabria is obligated to pay $100 per week in child support and $400 per week in alimony pursuant to the divorce agreement. His support obli-

gations total $24,000 per year, which is equal to or greater than his income.

Maldonado argued that Sanabria is earning much more than the amounts to which he testified. She testified that .the businesses and the jointly owned properties were generating more money. Based on the testimony, however, each of the businesses and properties were either in foreclosure proceedings or had been turned over to a receiver. Sanabria, therefore, could not collect any income from them. The only two businesses still in operation were the insurance business and the catering hall. Sanabria testified that the catering hall was operating at a loss, but that he still operated the insurance business and received income from it.

In her complaint, the plaintiff requests that her claim to the $350,000, from the defendant, pursuant to the property settlement agreement be excepted from discharge under 11 U.S.C. § 523(a)(5) and /or § 523(a)(15).

### *DISCUSSION*

At issue is whether or not the $350,000 owed to the plaintiff by the terms of the Property Settlement Agreement is excepted from discharge of the defendant's Chapter 7 petition pursuant to 11 U.S.C. § 523(a)(5) or (15).

### *11 U.S.C. § 523(a)(5) Dischargeability*

Section 523(a)(5) excludes from discharge debts owed as a result of a divorce that are classified as support, alimony or maintenance. Specifically excluded from the list of non dischargeable debts under § 523(a)(5) are obligations owed as property settlement arrangements.

Section 523(a) provides, in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other court order—

11 U.S.C. § 523(a)(5).

▮ Whether or not an obligation takes the form of support or alimony, for purposes of the Bankruptcy Code, is a matter of federal law. *In re Gianakas,* 917 F.2d 759, 762 (3d Cir.1990). In *Gianakas,* the Third Circuit held that whether an obligation falls within the category of support or alimony, as opposed to a property settlement depends upon the intent of the parties at the time of the settlement agreement. *Id.* at 762–63.

▮ Based on testimony and the terms of the agreement, the sum at issue can only be classified as a property settlement. At trial, Maldonado testified that the $350,000 sum was to be paid to her in consideration for all her rights and interest in the businesses and properties jointly owned by the parties.[1] Additionally, the agreement made provisions for both alimony and child support, which were separate from the section providing for the $350,000.

The court finds that the intent of the parties, at the time of the settlement agreement was to categorize the $350,000 as a property settlement. As such, the obligation at issue falls outside the scope of § 523(a)(5), which excludes from discharge only those obligations categorized as support, alimony or maintenance.

### 11 U.S.C. § 523(a)(15)

The complainant asserts that barring the exemption of the $350,000 from discharge under § 523(a)(5), dischargeability should be denied under § 523(a)(15).

Congress adopted § 523(a)(15) to prevent debtors from discharging marital debts other than alimony, maintenance or support that are incurred in connection with a divorce or separation, but which do not fall within the scope of § 523(a)(5). *See, In the Matter of Crosswhite,* 148 F.3d 879, 882 (7th Cir.1998). It is intended to encompass divorce related debts, such as those in property settlement agreements that "should not justifiably be discharged." 4 Lawrence P. King, Collier on Bankruptcy ¶ 523.21 (15th ed. rev.1998).

Discharge is permitted, however under § 523(a)(15) upon a showing that the debtor cannot pay the obligation, or that discharge of the debt would yield an inequitable result.

Section 523(a)(15) provides, in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual from any debt—

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation agreement ... unless—

(A) the debtor does not have the ability to pay such debt; or

(B) discharging the debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse or child of the debtor.

▮ The burden of proving that the obligation comes within the scope of § 523(a)(15) rests upon the non debtor spouse. *In the Matter of Crosswhite,* 148 F.3d at 884. To make this showing, the non debtor spouse must show that the debt does not fall under § 523(a)(5) and that it was incurred by the debtor in the course of

---

**1.** The sole property excluded from this arrangement was the marital home, which was

to be occupied by Maldonado until it was sold.

the divorce or in connection with a divorce decree or similar agreement. *Id.* at 884. The burden of proof then shifts to the debtor spouse to show that one of the exceptions of § 523(a)(15) applies. Once the non debtor spouse's initial proof is made, "the debt is excepted from discharge and the debtor is responsible for the debt unless either of the two exceptions, subpart (A), the 'ability to pay' test, or (B) the 'detriment' test, can be proven by the debtor." *Id.* at 884–85.

As discussed above, it is clear to the court from the testimony of Maldonado herself that the debt does not fall within § 523(a)(5). Maldonado did satisfy the initial showing that the debt was incurred in connection with a divorce. According to Maldonado's testimony, the debtor's obligation was to be paid in lieu of Maldonado's interest in the parties joint business ventures. The terms of the obligation were set forth in a document titled Property Settlement Agreement, and the agreement arose as a result of the parties divorce. Considering the testimony and exhibits, the court finds that the $350,000 sum was incurred in connection with a divorce, falls outside the scope of § 523(a)(5) and is a property settlement which falls within the scope of § 523(a)(15). As such, the debt is excepted from discharge under § 523(a)(15), unless an exception applies. The court must therefore address whether or not Sanabria met the burden of showing that he satisfies one of the exceptions under § 523(a)(15).

### 11 U.S.C. § 523(a)(15)(A)

The "ability to pay" test considers the debtors income and obligations. 11 U.S.C. § 523(a)(15)(A); *see also, In the Matter of Crosswhite,* 148 F.3d 879 (7th Cir.1998).

Based on the testimony and exhibits presented at trial, Mr. Sanabria does not have the ability to pay the $350,000 required by the Property Settlement Agreement. His income is less than his support obligations and he successfully demonstrated to the court that he meets the "inability to pay test."

### 11 U.S.C. § 523(a)(15)(B)

Although the inquiry could end at this point, as Sanabria need show only that one of the two exceptions to § 523(a)(15) is met, an analysis of the "detriment test" is warranted.

The "detriment test" weighs the burdens imposed on the non debtor spouse in not receiving the sum and the benefit to the debtor spouse in not paying the sum. "The debtor must ultimately demonstrate that, if the debt is discharged, the benefit to the debtor of that discharge is greater than the harm to the creditor." *In the Matter of Crosswhite,* 148 F.3d 879, 887 (7th Cir.1998).

As discussed above, Sanabria demonstrated that his annual income was approximately $17,000 $25,000. His support obligations to his ex-wife are equal to or greater than his annual income. Additionally, Sanabria has three young children to provide for. Sanabria testified that he had to borrow money to pay his support obligations. Indeed, discharging this debt would provide a benefit to Sanabria.

Additionally, Maldonado testified that if she received her full support obligations, that amount combined with her current income of approximately $23,000 per year would be sufficient to support her. The court recognizes that Sanabria is in arrears in his support obligations, and that he must pay all his arrears and maintain his current alimony payments. As such, Maldonado would not be greatly harmed by discharging this debt.

The court also recognizes that neither Sanabria nor Maldonado is living in the lifestyle to which they became accustomed when they were married. This, however, is the result of the failure of their businesses. Maldonado testified that during the marriage, the parties owned a home, a car and took vacations. Since the divorce, the home has been foreclosed, and Maldonado cannot afford a car or a vacation. Sanabria, however, is not reaping any benefits from the parties joint business ventures. All of the businesses are in foreclosure except for the catering hall, which operates at a loss and the insurance business, which provides some income to Sanabria. Although the businesses provided significantly greater income during the parties marriage, that income is no longer available due to the fact that the businesses are each either in Chapter 11 or have been foreclosed.

Taking into consideration the debtor's income and obligations, Sanabria has successfully proved that the detriment test weighs in his favor. Moreover, the benefits to Sanabria in discharging the debt at issue are greater than any harm caused to Maldonado. As such, the $350,000 sum is excepted from discharge under 11 U.S.C. § 523(a)(15)(B).

### CONCLUSION

In conclusion, the court finds that the $350,000 sum at issue is properly categorized as a property settlement agreement, was incurred in conjunction with a divorce and does not fall within the scope of § 523(a)(5). Additionally, Sanabria successfully proved that the sum falls within both[2] of the exceptions to § 523(a)(15), and as such is dischargeable in his Chapter 7 petition.

**2.** The court recognizes that Sanabria need only prove either subpart A *or* B in § 523(a)(15).

Counsel for the debtor shall submit an appropriate order within ten days of the date hereof.