In re Mary Gwynne McCLAIN, Debtor.

Brian L. TURNER, Plaintiff,

v.

Mary Gwynne McCLAIN, Defendant.

Bankruptcy No. 97–4604–RLB–7.

Adversary No. 97–297.

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

Aug. 31, 1998.

Paul T. Deignan, Ancel & Dunlap, Indianapolis, IN, for plaintiff.

Bill Green, Crawfordsville, IN, for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ENTRY ON COMPLAINT OBJECTING TO THE DISCHARGEABILITY OF A DEBT

ROBERT L. BAYT, Bankruptcy Judge.

This matter is before the Court on the Complaint Objecting to the Dischargeability of a Debt ("Complaint"), filed by Brian L. Turner (the "Creditor") on July 28, 1997. A hearing on the Complaint was held on June 18, 1998. The Court, having reviewed the Complaint and the matters presented at the June 18, 1998 hearing, and pursuant to Federal Rule of Civil Procedure 52 and Bankruptcy Rule 7052, now makes its

### Findings of Fact

1. Mary Gwynne McClain (the "Debtor") filed a petition under Chapter 7 on April 24, 1997.

2. The Debtor and the Creditor were married in April of 1984. Three children were born during the parties' marriage. At some point during the marriage, the parties incurred a joint debt secured by a mobile home located in South Carolina (the "Mobile Home").

3. The parties' marriage was dissolved in October of 1995. The dissolution court ordered that the Mobile Home be sold, and ordered the Debtor and the Creditor to each pay one-half of any deficiency that might result from the sale of the Mobile Home (hereinafter referred to as the "Mobile Home Debt"):

> The 1988 mobile home in Charleston, South Carolina, should be sold as soon as a buyer can be found. After payment of the costs of sale the balance of sale proceeds should be applied to pay the debt to Greentree Financial Services in the approximate amount of $19,128.05. Any amount remaining shall be divided equally. In the event that the balance of sale proceeds is not sufficient to pay the debt to Greentree Financial Services in full, then each party should be responsible to pay one-half of any deficiency to Greentree Financial Services.

Plaintiff's Exhibit 1, page 22. The dissolution decree did not include hold harmless language with respect to the Mobile Home Debt.

4. The Debtor has remarried since the parties' 1995 dissolution. The Debtor is now married to David McClain ("Mr. McClain"). Four children reside with the Debtor and Mr. McClain: the three children of the Debtor and the Creditor, and one child of the Debtor and Mr. McClain. The Debtor and Mr. McClain pay child support for a fifth child who resides with Mr. McClain's former spouse.

5. The Debtor works as a registered nurse, and currently has monthly take-home pay of $2,704. Debtor's Answers to Interrogatories, page 6. The Debtor receives

$220.00 per month as child support from the Creditor. Mr. McClain works as a salesperson for office supply companies, and currently has monthly take-home pay of $2,024. Debtor's Answers to Interrogatories, page 8. The Debtor and Mr. McClain reported a combined gross income of $53,639 on their 1996 tax return. Exhibit "A" to Debtor's Answers to Interrogatories.

6. The Debtor's monthly expenses total $4,820.48, including the $348.00 paid as child support for Mr. McClain's child. Exhibit "B" to Debtor's Answers to Interrogatories. The $4,820.48 figure includes a $100 per month payment that the Debtor and Mr. McClain make for a boat owned by Mr. McClain.[1] The Debtor and Mr. McClain are in the process of selling the boat.

7. The Debtor and Mr. McClain live in a residence that has a value of approximately $90,000. There is a mortgage debt on the home in the approximate amount of $85,000, which has been reaffirmed by the Debtor. The Debtor has also reaffirmed an automobile debt in the approximate amount of $15,000, secured by a 1993 van worth approximately $10,000. The Debtor initially indicated an intention to reaffirm a debt in the approximate amount of $2,000, secured by the wedding rings she and Mr. McClain owned, but the Debtor and Mr. McClain have since surrendered the rings to Goodman Jewelers. The Debtor and Mr. McClain have also surrendered several pieces of electronic equipment, a set of bedroom furniture, and a satellite dish. Debtor's Answers to Interrogatories, page 11; Statement of Intention attached to Debtor's bankruptcy petition.

8. The Creditor has also remarried since the parties' 1995 dissolution. The Creditor is now married to Dr. Terri Winn Turner ("Mrs. Turner"), a dentist with a dental practice in Crawfordsville. The Creditor and Mrs. Turner executed a pre-marital agreement prior to their marriage (the "Pre-Nuptial Agreement"), pursuant to which neither party to the agreement is responsible for the other party's pre-marriage debts. It is not clear from the testimony at trial whether any children reside with the Creditor and Mrs. Turner. The Creditor pays $55.00 per week child support to the Debtor, for his three children who reside with the Debtor.

9. The Creditor is not currently employed. He is a disabled veteran, and currently receives a monthly disability payment in the amount of $525.00. The Debtor recently graduated from Purdue University with a degree in engineering management. According to the Creditor, a graduate starting out in the engineering management field might earn an annual salary of $31,000. The Creditor was formerly employed by the military at an annual salary of $40,000 plus benefits. The Creditor and Mrs. Turner have purchased a Great Harvest bread franchise, with Mrs. Turner owning 90% of the stock of the company that owns the franchise. In return for managing the bread business, the Creditor will be paid $10.00 per hour, and will receive 10% of the profits the business presumably will eventually make. Mrs. Turner is paying approximately $200,000 to build the building in which the business will be operated, and will own the building after it is built.

10. The Creditor's monthly expenses include payments of $220 for child support, and approximately $200 for a $6,600 credit card debt. The Creditor has been making payments in the amount of $200 per month to Greentree Financial, the secured creditor with respect to the Mobile Home. According to the Creditor, the loan for the Mobile Home is a Veterans Administration loan, and if he does not keep the payments current on the loan, he will lose his veterans benefits. The Creditor also makes monthly payments of approximately $400 for the attorneys fees that he owes. Creditor's Answers to Interrogatories, page 3. In response to a question about his monthly expenses, the Creditor responded that his "name [is] on phone, electric, cell phone, life insurance, with children as beneficiaries". Creditor's Answers to Interrogatories, page 3.

---

1. Conflicting evidence was presented regarding the amount of the monthly boat payment. The Debtor's amended Schedule J reflects that the monthly payment is $100, but the Debtor testified that the monthly payment is $233.

11. At the June 18, 1998 hearing, no evidence was presented concerning the cost of maintaining the Creditor's current residence, or the income earned by the Creditor's wife.[2] The Creditor drives a 1988 vehicle with 165,000 miles, which he purchased for $700. On cross-examination, the Creditor testified that he and his wife live in a house worth approximately $230,000. Exhibit "B" attached to the Pre–Nuptial Agreement reveals that Mrs. Turner owns the residence that she and the Debtor reside in, as well as a nearby farm, and the office building from which her dental practice is operated. The residence, farm, and office building are all encumbered by mortgages.

12. The Creditor testified, without contradiction by the Debtor, that the debt on the Mobile Home is now approximately $17,500, and that it will sell for approximately $1,000. The Creditor predicts that there will be a deficiency of $15,000 to $16,000, with his share pursuant to the parties' dissolution decree being one-half, or approximately $8,000. If the Debtor is successful in discharging her one-half share of the deficiency, then the Creditor will remain responsible for the entire deficiency judgment.

Based on the foregoing Findings of Fact, the Court now makes its

### Conclusions of Law

1. The Court has jurisdiction to decide this matter. 28 U.S.C. Section 1334, 28 U.S.C. Section 157.

2. The facts of the instant case present the following issues for resolution by the Court:

a) Does the absence of hold harmless language in the parties' dissolution decree mean that the Debtor owes no debt to the Creditor at this point, and that there is no debt to be declared dischargeable or non-dischargeable under Section 523(a)(15)?

(b) Does the benefit to the Debtor of discharging the Debtor's responsibility for the Mobile Home Debt, outweigh the detrimental consequences to the Creditor of discharging the Debtor's responsibility for the Mobile Home Debt?

3. In the Complaint, the Creditor argues that the Debtor's responsibility for the Mobile Home Debt is not dischargeable pursuant to 11 U.S.C. Section 523(a)(15). Section 523(a)(15) provides as follows:

(a) A discharge under section 727 ... does not discharge an individual debtor from any debt—

. . . .

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation ... unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor. . . .

4. Where a creditor alleges that a debt is non-dischargeable pursuant to Section 523(a)(15), the *initial* burden of proof rests on the creditor to establish that the

---

**2.** Throughout this proceeding, the Creditor has alleged that his wife's financial situation is irrelevant to the issues before the Court, because pursuant to the Pre–Marital Agreement, Mrs. Turner is not responsible for any of the Creditor's debts. The Creditor makes the argument as follows in his Answers to Interrogatories:

(a) Plaintiff's wife is not a party to this adversary, Rule 33, Federal Rules of Civil Procedure.

(b) Information sought is not relevant because Plaintiff's wife is not obligated to pay the indebtedness involved herein, nor are her assets subject to the claims of the creditor owed money by Debtor and Plaintiff in relation to mobile home.

(c) Plaintiff and his wife entered into a Pre-Marital Agreement dated August 2, 1996 waiving all rights of Plaintiff to property of his wife and explicitly setting forth that neither party to said agreement shall ever be responsible for or obligated to pay the other party's premarital debts.

debt in issue is not of the kind described in 11 U.S.C. Section 523(a)(5), *i.e.,* that the debt in issue is a "property settlement" debt rather than a "support" debt. *In re Crosswhite,* 148 F.3d 879 (7th Cir.1998). After the creditor makes his or her initial showing, the burden of proof shifts to the debtor to establish that the debt should be discharged because (A) the debtor does not have the ability to pay the debt, or (B) because the benefit of discharge to the debtor is greater than the detriment of discharge to the non-debtor spouse. *Crosswhite.*

5. Sub-sections (A) and (B) of Section 523(a)(15) are written in the disjunctive: a property settlement debt is non-dischargeable unless the debtor can prove (A) he is unable to pay the debt, *or* (B) the benefit to the debtor of discharge outweighs the detriment to the creditor of discharge. Accordingly, a debtor "must meet the burden on only one of the two prongs of Section 523(a)(15) to prevent the debt from being excepted from discharge." *In re Florez,* 191 B.R. 112, 115 (Bankr.N.D.Ill.1995).

6. The Debtor argued at trial that because the parties' dissolution decree does not include hold harmless language that requires the Debtor to reimburse the Creditor if the Creditor has to pay the Debtor's one-half share of the Mobile Home Debt, there is no debt extant between the Debtor and the Creditor, and no debt to be judged dischargeable or non-dischargeable pursuant to Section 523(a)(15). This argument by the Debtor concerning lack of hold harmless language was recently rejected by the 6th Circuit BAP in *In re Gibson,* 219 B.R. 195 (6th Cir. BAP 1998). In *Gibson,* the 6th Circuit held that regardless of whether a separation agreement includes hold harmless language, a provision in a separation agreement requiring one spouse to pay what was formerly a joint debt, creates a debt that is enforceable by the non-paying spouse against the paying spouse. This Court adopts by reference the analysis set out in *Gibson,* and holds that regardless of the fact that there is no hold harmless language in the parties' dissolution decree, the Creditor has a "claim" against the Debtor with respect to the Mobile Home Debt.

7. The Court turns to the issue of the dischargeability of the Mobile Home Debt pursuant to Section 523(a)(15). Section 523(a)(15)(B) requires an examination of the relative financial situations of the debtor and the debtor's former spouse.[3] The Seventh Circuit held in *Crosswhite* that in making the benefit vs. detriment analysis required by Section 523(a)(15)(B), the Court should examine the "totality of the circumstances". *Crosswhite,* 148 F.3d at 883.

8. The Creditor has argued at length that his current wife's income and assets should not be taken into account in examining the Creditor's current financial status. According to the Creditor, the fact that the Pre–Nuptial Agreement provides that Mrs. Turner is not responsible for the Creditor's pre-marriage debts, and further provides that the Creditor is not entitled to any of the assets Mrs. Turner owned prior to the marriage, renders Mrs. Turner's finances irrelevant to the Creditor's finances.[4] The Creditor's argument is rejected, at least by implication, by the recent decision of the Seventh Circuit in *Crosswhite.* In *Crosswhite,* the Seventh Circuit had to consider whether the income of a live-in girlfriend should be included in an examination of the debtor's financial situation. The Seventh Circuit held that a review of the "totality of the circumstances" should include a review of the income of the debtor's live-in girlfriend.

The bankruptcy court determined that it ought not take into account the contribution of [the debtor's] live-in girlfriend to his economic condition. However, economic interdependence can indeed result in a significant alteration of economic realities.... To the extent that her contribu-

---

**3.** Because Section 523(a)(15) is written in the disjunctive, and based on the facts before the Court, the Court need not examine the Section 523(a)(15)(A) issue of whether the Debtor has the ability to pay the Mobile Home Debt.

**4.** Interestingly, the Creditor would argue that the income of Mr. McClain, the Debtor's current spouse, *should* be included in reviewing the Debtor's current financial situation, even though under Indiana law, Mr. McClain could not be pursued for payment of the Mobile Home Debt.

tion to household living expenses actually improved Mr. Crosswhite's economic picture, it was not, we believe, a factor that ought to have been eliminated from any consideration.

*Crosswhite,* 148 F.3d at 889 (footnote omitted). The Seventh Circuit directed the bankruptcy court examine factors such as "the period of time the individuals have lived as a single economic unit and the degree to which they have commingled their assets", in judging the degree to which the debtor and his girlfriend had become economically interdependent.

9. The *Crosswhite* court did not directly address the issue of the effect on two persons' degree of economic interdependence of a pre-nuptial agreement. Nevertheless, this Court believes that the analysis in *Crosswhite* strongly supports including Mrs. Turner's financial situation in the totality of the circumstances to be reviewed here. If the income of a live-in girlfriend can be deemed to be a factor to be considered in weighing the totality of the circumstances, then surely the income of a *spouse* should not be excluded from an examination of the totality of the circumstances. Although the fact that the Creditor and Mrs. Turner did execute a pre-nuptial agreement points toward a degree of economic independence, the fact that the Creditor and Mrs. Turner are living in a expensive home at Mrs. Turner's sole expense, and the fact that Mrs. Turner is heavily invested in the business that will provide the Creditor employment, weigh *heavily* in favor of finding a *high* degree of economic interdependence between the Creditor and Mrs. Turner. Clearly, the fact that the Creditor is married to Mrs. Turner has caused "a significant alteration of economic realities" for the Creditor. *Crosswhite,* 148 F.3d at 889.

■ 10. Taking into account the totality of the circumstances, it is the conclusion of the Court that the benefit to the Debtor of discharging the Mobile Home Debt, outweighs the detriment to the Creditor of discharging the debt. The Debtor and her spouse have four children living with them, and pay support for a fifth child. The total monthly income available to the Debtor and her spouse is $4,948, and the couple's total monthly expenses are $4,820, not including the monthly payment Mr. McClain makes to Bank One in the amount of $137. *See* Debtor's Answers to Interrogatories, page 9. Based on the foregoing figures, the Debtor has no income available to pay the Mobile Home Debt. The Debtor and her spouse live in a modest home with four children, and are living in what could only be described as a frugal style. The Creditor, on the other hand, lives in a $230,000 house, has the luxury of a prosperous spouse who can pay for both his and her monthly living expenses, and has the prospect of significantly increasing his income in the near future. If the Creditor is forced to pay the entire Mobile Home Debt, his current life-style will not be significantly affected. The Creditor is highly educated, has made a substantial income in the past, and has currently chosen to forego making any income, in order to develop a bread-making business being paid for by his spouse.

11. For all the foregoing reasons, it is the conclusion of the Court that the benefit to the Debtor of discharging her responsibility for the Mobile Home Debt, outweighs the detriment to the Creditor.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED, that the debt owed or to be owed by the Debtor to the Creditor, resulting from the sale of the parties' mobile home at a loss, in hereby DECLARED to be dischargeable pursuant to 11 U.S.C. Section 523(a)(15)(B).