In re Neil D. WALSH, Debtor.

Roberta C. Lesniewski, Plaintiff,

v.

Neil D. Walsh, Anthony S. Novak, Trustee, Defendants.

Bankruptcy No. 99–22193.
Adversary No. 99–2118.

United States Bankruptcy Court,
D. Connecticut.

March 31, 2000.

Donna J. Brooks, Dixon & Brooks, P.C., Winsted, CT, for plaintiff.

Neil D. Walsh, Unionville, CT, debtor-defendant pro se.

## MEMORANDUM OF DECISION

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

Roberta C. Lesniewski ("the plaintiff") on August 27, 1999, filed a complaint against Neil D. Walsh ("the debtor") asserting that the debtor's obligation to hold the plaintiff harmless from a debt due the United Business & Industry Federal Credit Union ("the credit union") is nondischargeable, pursuant either to Bankruptcy Code § 523(a)(15)[1] (First Count) or

---

**1.** Section 523(a)(15) provides that an individual debtor is not discharged "from any debt"—

. . .

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the court of a divorce or separation or in connection with a separation or in connection with a separation agreement, divorce de-

§ 523(a)(5) [2] (Second Count). The debtor, appearing pro se, filed an answer to the complaint denying that such obligation was nondischargeable. The court, on March 9, 2000, held a hearing on the complaint at which the following background was established.

## II.

The debtor filed a Chapter 7 petition on June 23, 1999 scheduling no assets for distribution to creditors. Some nine months prior, on September 15, 1998, the Connecticut Superior Court had dissolved the marriage of the plaintiff and the debtor and approved a Separation Agreement entered into by these parties ("the Agreement"). The plaintiff and the debtor had intermarried 20 years earlier and were the parents of two minor children, born in 1983 and 1986. In the Agreement, the parties agreed to joint custody of the children, with the debtor to pay weekly support of $160; the children were to reside with the plaintiff; "as an additional property settlement" the debtor agreed to hold the plaintiff "harmless" from six listed debts, including the credit union debt [3]; and the plaintiff agreed "as an additional property settlement" to hold the debtor "harmless" on a People's Bank debt, as well as on the mortgage debt on their marital home [4], the debtor having agreed to quitclaim his interest in the home to the plaintiff. The parties had incurred the credit union debt on October 28, 1997, in the original amount of $10,000 with interest at 11.25 percent payable over a four-year term. Section 11 of the Agreement further provided as follows:

> *Alimony.* Each party to receive alimony in the amount of One Dollar ($1.00) per year for debt indemnification purposes only.

Section 11 was added to the Agreement during the marriage dissolution hearing at the request of the Superior Court. The hearing transcript discloses the following colloquy during the plaintiff's testimony:

> The Court: Paragraph II, both parties are waiving alimony. You understand if you don't get alimony today, you can never get it?
>
> [The plaintiff]: Yes.
>
> The Court: It should be a dollar a year to each to make sure debt indemnification would be carried out. In other words, you each pay the debts you're

---

cree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) The debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;

2. Section 523(a)(5) provides that an individual debtor is not discharged "from any debt"—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

3. The Agreement listed the then balance on the debt as $9,161.45. The parties agree the present balance is $6,436.69.

4. The balance on the People's Bank debt was $4,500.00 and the mortgage debt was approximately $100,000.00.

supposed to and neither party gets alimony. If you don't, the other party can get alimony to make sure these debts are paid. Is that in agreement?

[The debtor]: I didn't catch . . . .

The Court: You each agreed to pay certain debts.

[The debtor]: Right.

The Court: So there should be a dollar a year awarded to each of you so if the other party doesn't pay the debts that they've agreed to pay, you can come into court and get an order for alimony to secure those debts. Otherwise, there would be no alimony. Do you understand what I'm saying?

[The plaintiff]: Yes, I do.

The Court: Do you understand?

[The debtor]: Yeah. I understand, but we waived the right on alimony.

The Court: If she doesn't pay the debts, you have the right to come in and get alimony to make sure those debts are paid. Otherwise, there would be no alimony. She would have the same right against you.

[The debtor]: Okay. And after the point that the debts are paid?

The Court: If the debts are paid, nobody gets alimony.

[The debtor]: Okay, that's fine.

·[The plaintiff]: Yes.

Neither the plaintiff nor the debtor were represented by counsel prior to and during the marriage dissolution proceeding, with the Agreement having been prepared by a mediator, jointly retained by them.

At the hearing on the instant complaint, each party introduced into evidence an affidavit disclosing current income, expenses, assets and liabilities. The plaintiff's affidavit showed monthly income of $3,087.40, including child support, expenses of $3,103.13, assets totaling $39,-065.68 [5], and $11,650 in liabilities [6]. The debtor's affidavit [7] disclosed $2,631.60 in monthly income, monthly expenses of $3,475.54 (including child support) and liabilities of $18,183.77 (primarily unpaid income tax and secured car loan obligations). Outside of a $2,000 interest in his 401K plan, the debtor's assets are negligible. The debtor is a boarder at his mother's home and pays her a monthly rent of $250.00. The plaintiff works in a medical office, and the debtor works as a quality inspector. The debtor has health problems including the need for a possible hip replacement.

## III.

### A.

#### *Section 523(a)(15)*

Section 523(a)(15) was added to the Bankruptcy Code by Congress in 1994.

> Section 523(a)(15) . . . excepts from discharge debts arising out of a divorce decree or separation agreement that are *not* in the nature of alimony, maintenance or support, i.e., property settlement obligations, unless the debtor has no ability to pay the debt, or alternatively, the discharge would result in a benefit to the debtor that outweighs the detriment to the nondebtor former spouse. Section 523(a)(15) was the solution to the alimony/property settlement dichotomy and the inequities caused by such cases as the Chapter 7 filing by a high-income spouse dissatisfied with the prospect of paying a substantial property settlement to a spouse of many years. The legislative history indicates that the new subsection addresses the treatment of hold harmless agreements and property settlements that were often used in exchange for lower alimony payments.

---

5. The plaintiff's supplemental trial brief notes that for the children's future college expenses, "whatever assets she has today, she needs to preserve for them." *Brief* at 3.

6. This amount includes the credit union debt.

7. As modified in the debtor's post-hearing brief.

*Celani v. Celani (In re Celani)*, 194 B.R. 719, 720 (Bankr.D.Conn.1996) (citations and quotation marks omitted.)

■ "Nondischargeability under § 523(a)(15) is subject to two exceptions, the existence of either one functioning to permit the debtor a discharge of that property settlement obligation. Subsection (A) provides that the obligation is discharged if the debtor: does not have the ability to pay such debt. . . . Subsection (B) provides that the obligation is discharged if discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor." *Hart v. Molino (In re Molino)*, 225 B.R. 904, 907 (6th Cir. BAP 1998); *see also In re Crosswhite*, 148 F.3d 879, 885 (7th Cir. 1998) ("the debtor is responsible for the debt unless either of the two exceptions, subpart (A), the 'ability to pay' test, or subpart (B), the 'detriment' test can be proven"); *Turner v. McClain (In re McClain)*, 227 B.R. 881, 885 (Bankr. S.D.Ind.1998) ("Sub-sections (A) and (B) of Section 523(a)(15) are written in the disjunctive. . . . Accordingly, a debtor must meet the burden on only one of the two prongs of Section 523(a)(15) to prevent the debt from being excepted from discharge.") (citation omitted).

### B.

■ The court concludes that the debtor has satisfied the requirements of § 523(a)(15)(A), the "ability to pay" test and that the debtor's obligation to the plaintiff for the credit union debt pursuant to the hold harmless provision of the Agreement is dischargeable. The plaintiff contends that the debtor's affidavit of expenses contains excessive amounts claimed for recreation and food. But even if the court were to eliminate the recreation expense in full and reduce the food expense by one-half, the affidavit indicates that the debtor would not have the ability to pay the credit union debt and retain funds to reasonably maintain himself. In addition,

in light of a question as to how long he can board at his mother's home at the present low cost ($250) and the uncertain state of both his emotional and physical health, the court is satisfied that the record fully supports a finding for the debtor under § 523(a)(15)(A). The debtor is hardly the paradigm of the "high-income spouse dissatisfied with the prospect of paying a substantial settlement to a spouse." The debtor did not file his bankruptcy petition solely to discharge the credit union debt, as his bankruptcy schedules disclose substantial additional debt to third parties.

■ Although only one of the two alternative tests under § 523(a)(15) need be satisfied in order for the debt to be dischargeable, the court also concludes that the benefit to the debtor of granting the discharge outweighs the detriment to the plaintiff. Applying § 523(a)(15)(B) makes for a closer call, in that while the plaintiff is clearly financially better off than the debtor, the necessity of her paying the credit union debt may well create a hardship. However, the debtor did substantially satisfy the other debts required to be paid by the Agreement as well as reducing the credit union debt, and it will be in everyone's ultimate best interest for the debtor to receive the full benefit of his discharge and to continue working so as not to jeopardize his ability to meet the child support payments.

In sum, the court concludes that, applying the provisions of either § 523(a)(15)(A) or (B) to the record made in this proceeding and assuming the debtor bears the burden of proof, judgment should enter for the debtor.

### IV.

*Section 523(a)(5)*

■ Section 523(a)(5) of the Bankruptcy Code provides as follows:

A discharge . . . does not discharge an individual debtor from any debt—

(5) to a ... former spouse ... for alimony to, maintenance for, or support of such spouse ..., in connection with a ... divorce decree....

In contrast, obligations assumed as part of property settlements are discharged. If the debtor has assumed an obligation of the debtor's spouse to a third party in connection with a ... divorce proceeding, such debt is dischargeable to the extent that [it] is not actually in the nature of alimony, maintenance, or support of debtor's spouse....

Included among the factors which courts take into account in determining whether an obligation is alimony, maintenance, or support are whether the obligation terminates on the death or remarriage of the debtor's spouse; whether the payments appear to balance disparate income; whether the payments are made to the ex-spouse or to a third party; whether assumption of an obligation is necessary to satisfy the daily needs of the ex-spouse, or to provide a home; the length of the marriage and number of children; and the intent of the parties.

*Persechino v. Ammirato (In re Ammirato),* 74 B.R. 605, 607–08 (Bankr.D.Conn. 1987) (citations and quotation marks omitted).

The plaintiff introduced into evidence the financial affidavits that the plaintiff and the debtor submitted at the time of the marriage dissolution hearing, a copy of the debtor's deposition and certain other documents. In her supplemental trial brief, the plaintiff posits that her best argument for nondischargeability rests under § 523(a)(5) for a finding of alimony, maintenance or support based upon the Superior Court's requirement that the parties add Section 11 before that court would approve the Agreement. In view of the colloquy quoted from the Superior Court transcript, the plaintiff apparently may request an alimony modification upon nonpayment by the debtor of the credit union debt. The Superior Court may or may not grant such a request taking into account present circumstances.

 The plaintiff bears the burden of proof on all essential elements of § 523(a)(5). This court has an insufficient basis to conclude that at the time of the entry of the marriage dissolution decree, the debtor's obligation to save the plaintiff harmless from the credit union debt represented other than a property settlement, as described in the Agreement, and was not in the nature of alimony, maintenance, or support.

## V.

### CONCLUSION

Judgment will enter, for the reasons stated, for the debtor-defendant that his obligation to the plaintiff is discharged.