In re William D. WHITNALL, Debtor.

Julie Halverson, Plaintiff,

v.

William D. Whitnall, Defendant.

Bankruptcy No. 02–31285–JES.
Adversary No. 02–2430.

United States Bankruptcy Court,
E.D. Wisconsin.

Jan. 16, 2004.

Thomas C. O'Brien, Esq., Salem, WI, for Plaintiff.

John A. Cabranes, Esq., Racine, WI, for Defendant–Debtor.

### DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

### *INTRODUCTION*

In this adversary proceeding, Julie A. Halverson ("plaintiff"), former spouse of debtor, William D. Whitnall ("defendant"), seeks a determination that payments to her from the defendant arising out of a divorce settlement and identified as "§ 71 payments"[1] are nondischargeable under

---

1. "§ 71 payments" are so designated because

they are made pursuant to § 71 of Title 26 of

11 U.S.C. § 523(a)(5). Alternatively, the plaintiff asserts that if these § 71 payments are not maintenance under § 523(a)(5), they are nondischargeable under 11 U.S.C. § 523(a)(15).

## FACTS

The plaintiff and defendant were married on June 7, 1991 and were divorced on September 29, 1999. No children were born to or adopted by the parties. At the time the divorce was granted, each party was 57 years old.

The plaintiff presently works as a customer service representative with Aegis Communications in Elkins, West Virginia. Her average net pay, based upon an hourly rate of $6.75, is approximately $438 every two weeks, although with overtime she sometimes earns in excess of that sum. The most net pay which she received over a 2-week period was $550. Her annual gross pay is approximately $16,000.

The defendant formerly was an attorney. His license was suspended at the time the divorce was granted and has since been revoked by consent. The defendant is now employed full-time as a special education high school teacher in the Racine Unified School District and is in his third year of employment. He earns as gross pay between $35,000 and $37,000 per year.

On September 29, 1999, an oral stipulation was reached by these parties in the divorce case with respect to all contested issues. The stipulation provided that the § 71 payments would be paid by the defendant to the plaintiff in the sum of $400 each month commencing 36 months from the date the divorce was granted. It further provided that, pursuant to § 71 of the Internal Revenue Code, the payments are deductible to the defendant and taxable to the plaintiff and are nonmodifiable. These "§ 71 payments"[2] were to continue until the plaintiff became 65 years of age.

On September 4, 2002, or about at the time the § 71 payments were scheduled to commence, the defendant filed a petition in bankruptcy under chapter 7. This adversary proceeding was thereafter filed on December 27, 2002.

## LAW

▮ It is the plaintiff's burden to establish by a preponderance of the evidence that the § 71 payments she was awarded are nondischargeable. *In re Crosswhite*, 148 F.3d 879, 881 (7th Cir.1998). Although exceptions to discharge are generally construed strictly against the creditor and liberally in favor of the debtor, that policy is tempered when the debts in question deal with obligations for spousal and child support. Bankruptcy law has had a longstanding, corresponding policy of protecting a debtor's spouse and children. *Crosswhite*, 148 F.3d at 881.

the Internal Revenue Code. Payments qualifying under this provision are, for income tax purposes, deductible by the payor and reportable as income by the payee.

**2.** Although the parties in the divorce case purported to structure the payments in accordance with § 71 of the Internal Revenue Code, it is questionable if that goal was accomplished. One of the requirements under § 71 of the Internal Revenue Code is that there shall be no liability for any further payments after the death of the payee spouse. In this case, in response to questioning by Judge S. Michael Wilk, the presiding judge in the divorce case, both attorneys stated that the payments would continue to the age of 65 and that, in the event of the plaintiff's death prior to that time, payments would nonetheless still continue to be paid to her estate (*see* pp. 4–5 of Exhibit "F"). Be that as it may, for purposes of this decision, the payments in question are referred to in this decision as "§ 71 payments," as so identified by the parties.

## SEC. 523(a)(5)

Under § 523(a)(5) of the Bankruptcy Code, whether a debt is a maintenance obligation or a property division is a matter of federal bankruptcy law, rather than state law. *In re Reines*, 142 F.3d 970, 972 (7th Cir.1998).

Many factors must be taken into consideration in deciding this issue. One key factor is the underlying intent of the parties.

Unfortunately, in this case, that intent is not clear. The testimony produced at this adversary proceeding by the attorneys representing each of the parties in the divorce action as well as their statements made to the court in the divorce proceedings are not very helpful in assessing the underlying intent of the parties.

Attorney Judith Hartig–Osanka represented the defendant in the divorce case. She testified that she was opposed to any order which provided for maintenance and that she "did not feel this was a maintenance case." She further stated that she discussed maintenance with the defendant and that he was steadfastly opposed to making any maintenance payments. Attorney Hartig–Osanka also testified that she did not recall any discussions with Attorney Thomas O'Brien, who represented the plaintiff in the divorce case, concerning the consequences of bankruptcy. Attorney Hartig–Osanka did, however, acknowledge that bankruptcy could have been discussed because her memory, using her words, "may not be the world's greatest." She stated that she viewed these payments as a "lump sum—nonmodifiable settlement." In the transcript of the divorce proceedings, Attorney Hartig–Osanka made the following statements to the divorce court:

Your Honor—the agreement would be as follows: maintenance to both parties is waived and denied. There will be an agreement that there will be what we call § 71 payments. Those are deductible to Mr. Whitnall, taxable to Mrs. Whitnall. They are nonmodifiable. They will commence in 36 months. They will be $400 per month, up to the time that Mrs. Whitnall becomes 65 years of age, which will be approximately 4 years and 9 months of payments.... If Mr. Whitnall's income is over $60,000, then commencing May 1st of that year for the following 12 months the payments will increase to $600 per month.... The payments will terminate upon Mrs. Whitnall's 65th birthday and eligibility for social security.

Attorney Hartig–Osanka further stated:

Your Honor, § 71 of the Internal Revenue Code has elements of maintenance in[sic] a property division, but avoids some of the pitfalls of both. Maintenance is amendable based upon a change of circumstances. Property divisions are dischargeable in bankruptcy. This is allowed by the Internal Revenue Code and is a combination of maintenance and property division which eliminates both of those features, and either being amendable or being dischargeable.

On the other hand, Attorney O'Brien, who represents the plaintiff in this adversary proceeding and also represented the plaintiff in the divorce case, testified that he clearly recalled that the subject of bankruptcy was discussed with Attorney Hartig–Osanka and further that it was his intent to have these payments made nondischargeable should a bankruptcy ultimately be filed by the defendant. In the transcript of the divorce proceedings, he stated the following:

§ 71(a), Your Honor, is a portion of the Internal Revenue Code as amended that allows parties to define a maintenance obligation. It further permits them by

formula or by express terms of the agreement to reach a *nondischargeable amount* (underlining added for emphasis) to be paid.

The testimony by the plaintiff and defendant regarding their underlying intent also does not shed light on what they intended and was directly contradictory. The defendant testified he did not recall any discussion about nondischargeability of § 71 payments in the event of his bankruptcy and further that, at the time the divorce was granted, he did not even intend to file for bankruptcy. On the other hand, the plaintiff testified that she repeatedly said, in the presence of both defendant and defendant's attorney, that these § 71 payments cannot be dischargeable.

■ In view of the foregoing, the court's ability to ascertain the underlying intent of the parties is, to the say the least, difficult. However, there are other factors which the court evaluates in deciding if payments constitute maintenance or property division. Bankruptcy courts frequently look to the function that such payments were intended to serve, notwithstanding any language in the parties' agreement or divorce decree to the contrary. *Collier Family Law* § 6.04(8) states the following:

> Debtors seeking to establish that their obligations are in the nature of property settlements rather than alimony or support often point in support of their arguments to clauses in marital settlement agreements in which their spouses waived all rights to alimony or support or agreed to make payments in lieu of alimony or support. They are sometimes successful. Usually such arguments have had little persuasive effect especially if the non-debtor spouse did not have any other adequate means of support at the time of the agreement.

The case of *Sylvester v. Sylvester*, 865 F.2d 1164, 1166 (10th Cir.1989), declares that, even though a wife agreed that she was relinquishing any rights that she may have for support, the circumstances of her low income and her needs to care for a child, the lengthy period of the payments, and the terminability of the obligation upon remarriage or death led the court to conclude that the marital obligation was for support. Similarly, in *In re Carrigg*, 14 B.R. 658 (Bankr.D.S.C.1981), despite the fact that the divorce decree stated payments were a property settlement and that the obligee had "waived any alimony and she is forever barred from alimony" the bankruptcy court nonetheless found these payments were intended to provide the plaintiff with a place to live and therefore were in the nature of alimony or support. *Id.* at 661.

■ In this case, even though the marital settlement agreement declared that "maintenance to both parties is waived and denied," for purposes of nondischargeability in bankruptcy, that statement is not conclusive. It is clear to this court that the § 71 payments were needed to enable the plaintiff to maintain her daily necessities, including food, housing, and transportation and also to bridge the gap for the plaintiff until such time as she attained age 65, when she would then be eligible to receive Social Security and a small pension of around $300–320 per month over ten years from Davis & Elkin College in West Virginia where she previously had worked. It is also clear to this court that the plaintiff would have great difficulty in providing for herself unless she received these payments. Up to now, she has had to rely upon her children and others to meet her daily needs. She testified that she is receiving food from the cleaning lady at Aegis Communications who gives her "outdated food" from the vending machines. It is the function of

the § 71 payments that tip the scales in favor of this court's determination that the § 71 payments are a form of maintenance.

### SEC. 523(a)(15)

■ Although this court has found that the § 71 payments are maintenance, it recognizes that because of the ambiguity with respect to the intention of the parties, this is a close call. However, even if the § 71 payments are not maintenance, this court is persuaded that they are nondischargeable under § 523(a)(15).

■ Under § 523(a)(15), the burden of establishing this exception to discharge is initially on the plaintiff. Once it is shown that the debt was incurred in connection with a separation agreement or a divorce decree, the burden then shifts to the debtor. *Crosswhite*, 148 F.3d at 884–85. In this case, it is undisputed that the § 71 payments arose out of the parties' stipulation which was then incorporated into the divorce decree. The burden then shifted to the defendant to prove that this debt should be discharged either because: (1) he lacks the ability to make these payments or (2) the benefit of a discharge to him outweighs the detrimental consequences to the plaintiff.

■ Courts have differed as to what is the appropriate time to determine the respective financial circumstances of the parties for purposes of § 523(a)(15). Clearly, it is not when the divorce was granted. Some courts, however, hold that the financial circumstances must be viewed as of the time of the filing of the bankruptcy petition. *In re Carroll*, 187 B.R. 197 (Bankr.S.D.Ohio 1995). Most courts hold that these financial circumstances are to be considered either at the time of the filing of the adversary complaint or at the time of the trial. *In re Dunn*, 225 B.R. 393, 399 (Bankr.S.D.Ohio 1998); *In re Haines*, 210 B.R. 586 (Bankr.S.D.Cal.

1997); and *In re Morris*, 193 B.R. 949 (Bankr.S.D.Cal.1996). In the case at bar, it makes little difference because the financial circumstances of the parties changed very little from the date of the filing of the bankruptcy petition to the date that the adversary trial was held. This court has in the past and continues to take the position that it must view the financial circumstances of the parties as of the date of the trial. *See In re Shteysel*, 221 B.R. 486, 488 (Bankr.E.D.Wis.1998).

### Ability to pay test–§ 523(a)(15)(A)

As previously noted, the defendant is working as a high school special education teacher in the Racine Unified School District, with gross pay earnings between $35,000 and $37,000. He is contributing $600 each month to be used in connection with the monthly mortgage on the home in which he and his fiancée reside and which home is owned by her. He carries medical insurance and stated that he is in reasonably good health, although he does need some dental work. He is working on a full-time basis. The defendant does not own a car and is driving a car owned by his fiancée's granddaughter until such time as he can purchase his own car. He acknowledges, however, that he is "a lot better off" financially at the present time than he was when the divorce was granted.

Recently, the defendant started setting aside $400 from each of his paychecks and is depositing these funds into his credit union account because of his fear that he may be required to return to the Racine Unified School District the increased wages he was receiving in 2003. He bases this concern upon a letter he received from Frank L. Johnson, Executive Director/Counsel of the District in October of 2003 which points out this possibility unless the District's proposal for a new contract with the teachers in this District is

accepted. While such a drastic step of recovery by the District of the increased wages made to the teachers is a possibility, it is only a possibility. The defendant testified that he is unaware of this drastic step ever having been taken in the past. It appears to this court that this is a negotiating tactic being utilized by the District in attempting to work out a new contract with the teachers. Recovery of the increased payments made to the teachers is not a certainty, and in the unlikely event that recovery of the increased wages is invoked by the District, it is unclear how much the defendant would be required to repay or the method of such repayment.[3]

The court finds that the defendant's actions in setting aside $400 from each paycheck and placing it into the Racine Teachers Credit Union is an arbitrary measure on his part. It further finds that this demonstrates the defendant's ability to make such payments to the plaintiff as agreed upon in the oral stipulation reached in the divorce case. The court is satisfied that the defendant has the ability to make these payments to the plaintiff.

### Benefit of a discharge to the defendant vs. detrimental consequences to the plaintiff— § 523(a)(15)(B)

Upon a review of the income and expenses of these parties, the court finds that the detriment the plaintiff would suffer should the defendant's obligation to make payments be discharged clearly outweighs any benefit to the defendant which he would otherwise obtain if the obligation to make the § 71 payments is discharged.

The defendant's income and earning ability far exceed that of the plaintiff. While the payment of this obligation may well place some strain upon the defendant, it is minimal when compared to the detriment which the plaintiff would otherwise suffer if this obligation is discharged. The record in this case is compelling that the plaintiff is barely able to survive at the present time. She has both physical and emotional problems and is unable to handle stress. She, like the defendant, also is in need of dental work. As previously pointed out in the court's discussion under § 523(a)(5), the plaintiff can only meet her daily needs with the assistance from her children and from others. Although she does own a home, it was purchased through the West Virginia Housing Development Fund, an assistance program for persons such as the plaintiff with limited income. The home she owns is described as "a very small house containing 860 square feet." She does have a boarder, but his contributions are meager—approximately $20 per month—and he is in very poor health. The plaintiff owns a 1998 Dodge Neon automobile, which she purchased after the parties separated and before the divorce was granted. This car has over 100,000 miles. She testified that she cannot presently afford to purchase a television set.

On the other hand, the defendant's fiancée is park director at West Lawn Memorial Park in Racine, Wisconsin. Although the defendant testified he did not know what his fiancée is earning, it is clear that her financial situation is much more stable than that of the plaintiff's boarder.

Based upon a comparison of the financial condition of each of the parties, the court is satisfied that the granting of a discharge to the defendant would be much more detrimental to the plaintiff than any benefit which the defendant would obtain if

---

**3.** On January 8, 2004, the *Milwaukee Journal Sentinel* reported that the District and the Racine teachers reached a tentative contract. Some of the terms of the contract were set forth in this article. Nothing reported indicates that there will be any recovery from the teachers of the increased wages they received in 2003.

such discharge of this obligation is granted to him.

### CONCLUSION

Under these circumstances, the payments which the defendant was ordered to pay to the plaintiff arising out of the divorce settlement and identified as " § 71 payments" are nondischargeable. An appropriate order declaring such payments nondischargeable shall be entered.

The foregoing constitutes this court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.